No. 03-582

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 51

IN THE MATTER OF THE ESTATE
OF FRIEDA KINDSFATHER,

            Deceased,

JUDY FRANKS, Personal Representative,

            Respondent,

      v.

GARY H. KINDSFATHER and JACQUELINE P. KINDSFATHER,

            Appellants.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone, Cause No. DP 02-225
                The Honorable Diane G. Barz, Judge presiding.


COUNSEL OF RECORD:

            For Appellants:

                  Kenneth D. Peterson, Peterson and Schofield, Billings, Montana

            For Respondent:

                  Mark D. Parker, Casey Heitz, Parker Law Firm, Billings, Montana

            For Estate:

                  Richard A. Brekke, Brekke & Hoskins, PLLC, Billings, Montana


                              Submitted on Briefs:  February 25, 2004

                              Decided:  March 1, 2005

Filed:


            _____
                              Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1    Gary H. and Jacqueline P. Kindsfather appeal a decision of the District Court for the Thirteenth Judicial District, Yellowstone County, denying their request for a declaratory judgment declaring the validity and effectiveness of a waiver-of-interest document executed by Frieda Kindsfather, now deceased, and ordering them to make all payments due Frieda's estate. We affirm.

¶2    We address the following issues on appeal:

¶3    1. Whether the District Court erred when it determined that the waiver-of-interest document could be rescinded because it was obtained by fraud.

¶4    2. Whether the District Court erred in determining that the waiver-of-interest document was invalid because it lacked consideration.

### Factual and Procedural Background

¶5    Frieda died on September 1, 2002, at the age of 86. Frieda's Last Will and Testament, executed on October 14, 1988, was admitted to probate on September 9, 2002, and Letters of Administration were issued to her daughter, Judy Franks, as Personal Representative of Frieda's estate. In addition to Judy, Frieda was survived by two other daughters: Bonnie Wallila and Donna Walter. She was also survived by three sons: Tom Kindsfather, Ronald Kindsfather and Appellant Gary Kindsfather.

¶6    At the time of her death and for approximately 46 years prior thereto, Frieda resided on a farm in Laurel, Montana. The land is legally described as follows:

> Tract 1, Certificate of Survey No. 1872; Tract 1, Certificate of Survey No. 1106; and E½ (less Certificates of Survey No. 1106, 1511, 1839 and 1872),

2

all in Section 12, Township 2 South, Range 23 East, MPM, Yellowstone County, Montana.

¶7      At issue in this appeal are approximately 163 acres of farm land on which Gary and his wife Jackie reside.   Frieda sold this land to Gary and Jackie on a Contract for Deed in December 1984 for $126,000.00.   The contract carried 9% interest and was payable in annual installments for 25 years. The first installment was due on July 1, 1986, in the amount of $17,010.82.  Subsequent installments in the amount $12,877.82, were due on July 1st of each year thereafter.  Frieda retained a life estate for her house, and she continued to live there until her death.

¶8      Gary and Jackie failed to make timely payments as required by the Contract for Deed resulting in a delinquency of their interest obligations in the amount of $65,000.00. Consequently, in late December 2001, Gary approached Frieda and told her that he did not believe the farm would produce enough income to pay off the delinquent interest obligation plus the principal balance remaining on the contract.  Jackie also spoke with Frieda about the hard times she and Gary had encountered while trying to make ends meet on the farm. According to Gary and Jackie, Shane Osburn, a loan officer with the Yellowstone Bank of Columbus who was in charge of the escrow on the Contract for Deed, advised them to obtain a waiver-of-interest document from Frieda indicating her agreement to forgive all of the back interest.  However, at the April 28, 2003 hearing in this matter, Osburn denied making any such recommendation.

¶9      On January 2, 2002, Jackie prepared the following document for Frieda to sign:

3

I, Frieda Kindsfather, on the day of 1/2/02 chose the right to wave [sic] the back interest due to me, on the land known as, the property of Gary and Jacqueline Kindsfather. As per the agreement on the contract for deed account number L676. The dates for the back interest include Jan. 1, 1996 to Dec. 31, 2001.

This document does not, on its face, provide any consideration for Frieda's benefit. And, although Judy held a Power of Attorney for her mother, neither Gary nor Jackie consulted with Judy about waiving the interest. Moreover, Judy testified that Frieda never spoke with her or any of her other siblings about waiving the interest on the deed.

¶10 On December 9, 2002, Gary and Jackie petitioned the District Court requesting that the Court enter a declaratory judgment that the waiver-of-interest document was valid and that, upon receipt of the unpaid balance of the Contract for Deed, the Yellowstone Bank of Columbus release the Warranty Deed held in escrow to Gary and Jackie. Judy, as Personal Representative of Frieda's estate, resisted the declaratory judgment action.

¶11 The District Court held a hearing on Gary and Jackie's petition on April 28, 2003. Because Judy raised a question about the authenticity of the waiver-of-interest document itself and Frieda's capacity to enter into that agreement, the court heard testimony from several individuals regarding whether Frieda had signed the document and Frieda's mental condition prior to her death.

¶12 Brett Lund of Rocky Mountain Crime Consultants testified that, in his opinion, the signature on the waiver-of-interest document did not appear to have been written by Frieda when compared to Frieda's known writing exemplars. However, Leslie Hutchins, a Notary Public for the Laurel Federal Credit Union, testified that Frieda, Gary and Jackie all signed

4

the document in her presence on January 2, 2002. And, while Gary and Jackie both testified that they explained to Frieda in front of Hutchins the amount of interest Frieda would be waiving by signing the document, Hutchins testified that she did not hear either Gary or Jackie inform Frieda of the amount of interest Frieda would be waiving.

¶13    Hutchins also testified that when she notarized Frieda's signature on the document, Frieda appeared to have all of her faculties about her and Frieda claimed that she understood the document. Frieda's family physician, Dr. Robert Ulrich, testified by deposition that prior to Frieda's death, he treated her for stomach problems and hypertension, but that he had not noticed any signs of dementia or Alzheimers disease.

¶14    On June 27, 2003, the court entered its Findings of Fact, Conclusions of Law and Order wherein the court determined that the waiver-of-interest document could be rescinded because it had been fraudulently obtained and because it lacked consideration. The court did not address the authenticity of the document itself. Because it determined that the document was invalid, the court denied Gary and Jackie's request for a declaratory judgment and ordered that they make all payments due Frieda's estate on the Contract for Deed, together with interest and back interest, on or before August 31, 2003. Gary and Jackie appeal from the District Court's order.

**Standard of Review**

¶15    We review a district court's findings of fact to determine whether those findings are clearly erroneous. *Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7 (citing *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 202-03, 930 P.2d 37, 41). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Galassi, ¶ 7 (citing *Daines v. Knight* (1995), 269 Mont. 320, 325, 888 P.2d 904, 906; *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *City of Great Falls v. DPHHS*, 2002 MT 108, ¶ 10, 309 Mont. 467, ¶ 10, 47 P.3d 836, ¶ 10 (citing *Safeco v. Montana Eighth Judicial Dist.*, 2000 MT 153, ¶ 12, 300 Mont. 123, ¶ 12, 2 P.3d 834, ¶ 12).

**Issue 1.**

¶16    *Whether the District Court erred when it determined that the waiver-of-interest document could be rescinded because it was obtained by fraud.*

¶17    To establish a *prima facie* case of actual fraud, the party asserting the claim must establish the following nine elements: (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably

6

contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation. *State ex rel. Ins. Fund v. Berg* (1996), 279 Mont. 161, 175, 927 P.2d 975, 983 (citing *Davis v. Church of Jesus Christ* (1993), 258 Mont. 286, 293, 852 P.2d 640, 644; *Lee v. Armstrong* (1990), 244 Mont. 289, 293, 798 P.2d 84, 87).

¶18    Actual fraud is always a question of fact. Section 28-2-404, MCA. A mere suspicion of fraud is not sufficient, fraud must be proven by a preponderance of the evidence. *Barrett v. Holland & Hart* (1992), 256 Mont. 101, 106, 845 P.2d 714, 717 (citing *Batten v. Watts Cycle and Marine*, Inc. (1989), 240 Mont. 113, 117, 783 P.2d 378, 380-81, *cert. denied*, 494 U.S. 1087, 110 S.Ct. 1826, 108 L.Ed.2d 955 (1990)). In order to sustain the burden of proof, the party asserting fraud must prove each of the nine elements. *Barrett*, 256 Mont. at 106, 845 P.2d at 717.

¶19    To determine whether fraud was committed in this case, we will examine each of the elements in turn.

### 1. A Representation

¶20    Gary and Jackie do not dispute that they represented to Frieda that they were experiencing difficult times financially. At the declaratory judgment hearing in this matter, both Gary and Jackie testified that they had discussed with Frieda their dire financial situation which prohibited them from making payments as required by the Contract for Deed. In addition, on December 9, 2002, Gary filed an affidavit with the District Court wherein he

7

stated:

> Toward the end of 2001, when we found out from the banker that we were about $65,000 delinquent on our interest payments on the contract for deed, I told Mom about it; and I told her there was no way we could ever afford to pay off all that interest plus the remaining principal balance.

### 2. *Falsity of the Representation*

¶21    Gary's and Jackie's statements to Frieda about their financial situation were false. Even as Gary and Jackie were professing their poor final condition to Frieda, their financial statements reflected a net worth of $366,137.00 on January 18, 2000, with a projected income in the amount of $196,155.00; a net worth of $352,738.00 on January 30, 2001, with a projected income of $217,306.00; a net worth of $316,367.00 on February 1, 2002 (only one month after Frieda signed the waiver-of-interest document), with a projected income of $228,343.00; and a net worth of $338,295.00 on January 30, 2003, with a projected income of $310,198.00. In addition, Lowell Cooke, a real estate broker, testified that the agricultural value of the farm and grass land in question was in excess of $600,000.00. The value of the land for subdivision development was not discussed.

¶22    Moreover, Gary testified that prior to having Frieda sign the waiver-of-interest document, he had met with his bankers and was told that he could borrow enough money to pay off the Contract for Deed at 5% interest rather than the 9% he was paying Frieda. And, Jackie testified that if the District Court ordered them to pay off the ranch, they would not lose it.

### 3. *Materiality of the Representation*

8

¶23 Gary's and Jackie's financial representations to Frieda as to their financial position were material to the purported waiver of interest. When asked why she thought Frieda waived the interest, Jackie testified: "I think she did it because she was afraid maybe we couldn't pay it and she didn't want to see us lose the farm . . . ." Likewise, Gary testified on direct examination:

> Q. [Appellant's counsel] Did you ever tell Frieda that you would have to sell the farm if you had to pay an additional $65,000 interest?
> A. [Gary] I said it was a possibility.

And, on cross-examination, Gary testified as follows:

> Q. [Respondent's counsel] Now, you are not saying that your mother forgave the interest on the note because she liked you better than your brothers and sisters, are you?
> A. [Gary] No.
> Q. What you are saying . . . is that you think your mother signed the waiver because she didn't want to see you lose the place, fair statement?
> A. Yes.

### 4. *Speaker's Knowledge of the Representation's Falsity*

¶24 Both Gary and Jackie knew their representations to Frieda regarding their financial condition were false. Their financial statements for the years 2000 through 2003, introduced during the hearing, indicate that their projected income for each of those years averaged $238,000.00 and that their net worth around the time the representation was made was more than $300,000.00. In addition, Gary testified that he could have obtained a loan from a qualified lender in an amount large enough to pay off all of the money owed to Frieda under the Contract for Deed, including the back interest.

### 5. *Speaker's Intent that Representation be Acted Upon*

¶25 By making these representations regarding their financial condition, Gary and Jackie knew that Frieda may act upon them. Gary testified that he believed Frieda agreed to waive the $65,000.00 in interest because she wanted the farm that she and her husband had spent many years building to keep going. Furthermore, Jackie testified that prior to signing the waiver-of-interest document, Frieda told them that she didn't want them to lose the farm because she wanted it to stay in the family.

### 6. Hearer's Ignorance of the Representation's Falsity

¶26 Both Gary and Jackie testified that Frieda was not aware of their true financial position and net worth. Gary testified:

> Q. [Respondent's counsel] Did you, yourself ever tell your mother, prior to obtaining the [waiver-of-interest document], that you could have borrowed enough money to pay off the entire contract for deed?
> A. [Gary] No.
> Q. Did you ever tell your mother, prior to obtaining the [waiver-of-interest document], that you and your wife had a personal net worth of somewhere between a quarter of a million and third of a million dollars?
> A. She probably could see that. I didn't tell her.

Similarly, Jackie testified:

> Q. [Respondent's counsel] But you could have paid that much in interest, couldn't you?
> A. [Jackie] Well, at the time I didn't know whether we could or not.
> Q. And so Frieda wouldn't have known whether you could or not either, could she?
> A. No.
> . . . .
> Q. Did you ever talk to your mother-in-law at all about your personal finances to let her know your whole personal financial setting, top to bottom, your net worth, things like that?
> A. No.

*7. Hearer's Reliance upon the Truth of the Representation*

¶27     Both Gary and Jackie testified that the reason Frieda signed the waiver-of-interest document was because of their representations that they would lose the family farm if Frieda did not sign the document.  While Frieda is not here to testify about her reliance on their representations, this Court has long held that "[a]n inference of reliance upon fraudulent representations may be drawn from circumstances surrounding the transactions which have been proven." *Poulsen v. Treasure State Industries, Inc.* (1981), 192 Mont. 69, 79, 626 P.2d 822, 827 (citations omitted).  Clearly Frieda would not have waived the interest agreed upon under the Contract for Deed had she not relied upon Gary's and Jackie's representations that they might lose the family farm.

*8. Hearer's Right to Rely upon the Representation*

¶28     Frieda had no reason to disbelieve Gary's and Jackie's representations.  Gary and Jackie testified that they were both very close to Frieda and that they maintained a position of trust with Frieda.  To that end, Gary testified at length about all of the things he and his family did for Frieda and with Frieda.  Similarly, Jackie testified that both she and Gary had a "real good" relationship with Frieda.

11

*9. Hearer's Damages*

¶29 Frieda's reliance upon Gary's and Jackie's false representations about their financial condition injured Frieda financially at least in the amount of the $65,000.00 that she waived.

¶30 Based on the foregoing, we conclude that the District Court was correct in determining that all nine elements of fraud were established by a preponderance of the evidence in this case.

¶31 Under Montana's statutory law, consent is an essential element of a contract and consent of the parties to a contract must be free, mutual, and communicated by each to the other. Sections 28-2-102 and 301, MCA. Furthermore, § 28-2-401(1)(c), MCA, provides that consent is not real or free when obtained through fraud. And, § 28-2-1711(1), MCA, provides that a party to a contract may rescind that contract if the consent of the party rescinding was obtained through fraud. In the case *sub judice*, we conclude that Frieda's consent to the waiver-of-interest document was not free because it was obtained by fraud. Thus, Judy, as personal representative for Frieda's estate could rescind that document. *See In re Estate of Long* (Ind. Ct. App. 2004), 804 N.E.2d 1176 (holding that the personal representative stands in the shoes of the decedent).

¶32 Accordingly, we hold that the District Court did not err when it determined that the waiver-of-interest document could be rescinded because it was obtained by fraud.

**Issue 2.**

¶33     *Whether the District Court erred in determining that the waiver-of-interest document was invalid because it lacked consideration.*

¶34     Gary and Jackie contend on appeal that the waiver-of-interest document did not have to be supported by consideration because the waiver was an irrevocable gift.  Judy argues that because Gary and Jackie did not raise this argument in the District Court, nor did they provide any evidence supporting this argument, it should not be addressed on appeal since it is a new legal theory.  This Court has long held that it will not address either an issue raised for the first time on appeal or a party's change in legal theory.  *Bekkedahl v. McKittrick*, 2002 MT 250, ¶ 31, 312 Mont. 156, ¶ 31, 58 P.3d 175, ¶ 31.  Hence, we will not consider this argument.

¶35     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER