DA 13-0446

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 21

JEM CONTRACTING, INC.,
a Montana Corporation,

      Plaintiff and Appellant,

    v.

MORRISON-MAIERLE, INC., a Montana
Corporation, GALLATIN COUNTY, a
political subdivision of the State of Montana,
and MADISON COUNTY, a political subdivision
of the State of Montana,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 11-580B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            W. Scott Green; John M. Van Atta; Patten, Peterman, Bekkedahl &
            Green, PLLC; Billings, Montana

      For Appellees:

            Matthew F. McLean, Kelsey Bunkers; Crowley Fleck, PLLP; Bozeman,
            Montana (for Morrison-Maierle, Inc.)

            Chris P. Christensen; Madison County Attorney; Virginia City, Montana
            (for Madison County)

            Marty D. Lambert; Gallatin County Attorney; Christopher B. Gray,
            Deputy County Attorney; Bozeman, Montana
            (for Gallatin County)

Submitted on Briefs:  January 2, 2014
Decided:  January 28, 2014

Filed:

_____
                          Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1     JEM Contracting, Inc. (JEM) appeals the order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment to defendant Morrison-Maierle, Inc. (MMI).  The dispute arose out of a construction contract between JEM, as contractor, and defendants Gallatin County and Madison County (County Defendants) for a road improvement project.  MMI was hired by County Defendants to provide engineering services and supervision on the project.  JEM filed suit against MMI alleging detrimental reliance and fraudulent inducement for promises allegedly made during the job by MMI that JEM would be paid for unanticipated costs incurred during pulverization of the old road.  MMI moved for summary judgment, arguing that JEM could not prove that it had been harmed by its alleged representations.  The District Court granted MMI's motion, dismissing all claims against it.

¶2     We affirm and address the following issues:

¶3     1.  *Did the District Court err by concluding that JEM was required to continue performance pending approval of a change order under a contract provision that JEM claims is void as against public policy?*

¶4     2.  *Did the District Court err by granting summary judgment to MMI on the ground that JEM had failed to show it was harmed by the representations made by MMI?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Defendant Counties retained JEM to provide construction services on a road improvement project over a 3.6 mile stretch of road near Big Sky that passed through both counties.  MMI was retained by the Defendant Counties to provide engineering

3

services and to act as the owner's representative on the project. No contract was entered directly between JEM and MMI.

¶6 JEM alleged that on June 21, 2010, the first day of the project, it encountered subsurface conditions that differed significantly from the plans and specifications upon which it had based its bid, and which would require increased time and costs for pulverization of the old road surface. JEM discussed the discrepancy with MMI's on-site representatives over the next few days, some of whom agreed with JEM that the conditions differed from the plans, and at least one who disagreed. JEM proceeded with the job and did not provide written notice to MMI of the alleged differing conditions until July 9, 2010. That same day, JEM and MMI met to discuss the situation. JEM alleged that MMI agreed in this meeting that the site conditions varied from the contract specifications and promised JEM it would be paid for the increased costs related to the differing subsurface conditions if JEM could find savings on the rest of the job to complete it within the contract price. Specific dollar costs were not discussed at this time as JEM did not know the amount of the change order it would be seeking.

¶7 On July 29, 2010, JEM submitted a claim for additional compensation. MMI reviewed the claim and determined that JEM had provided insufficient evidence to support its claim and additionally had failed to follow the notification procedure set out in the contract for nonconforming site conditions. JEM and MMI met to discuss the matter, and MMI again concluded that JEM had failed to provide sufficient evidence to substantiate its claim that site conditions differed from the plans. JEM presented its

4

request directly to Defendant Counties on November 4, 2010. This request was reviewed by the counties' administrative committee for the project and was denied.

¶8 JEM completed its work on the project, contending that it had found savings in the remaining work, as requested by MMI, to cover the increased cost of subsurface work. Nevertheless, Defendant Counties continued to deny JEM's change order. The Counties also refused to release a portion of the retainage withheld from monthly progress payments under the contract pending "substantial completion" of the project, due to JEM's failure to provide certain documents required by the contract. On June 13, 2011, JEM filed its complaint against Defendant Counties and MMI alleging breach of contract, detrimental reliance, quantum meruit, fraud by inducement, and punitive damages. JEM later clarified that the claims for breach of contract, quantum meruit, and punitive damages were made against Defendant Counties, while the claims for detrimental reliance and fraud by inducement were made only against MMI. JEM subsequently settled with Defendant Counties and dismissed its claims against them.

¶9 MMI moved for summary judgment, arguing that JEM's claims of detrimental reliance and fraud by inducement failed because (1) JEM failed to state cognizable claims for relief; (2) MMI's alleged promises were nothing more than "agreements to agree;" and (3) the claims contradicted the clear and unambiguous terms of the contract. The District Court granted MMI's motion. JEM appeals from the order granting summary judgment to MMI.

**STANDARD OF REVIEW**

¶10    We review a district court's ruling on a motion for summary judgment de novo, applying the same M. R. Civ. P. 56 criteria as the district court. *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 20, 353 Mont. 534, 221 P.3d 675. Summary judgment is appropriate when there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). All reasonable inferences which may be drawn from the evidence must be drawn in favor of the party opposing summary judgment. *Dick Anderson*, ¶ 20. We review the district court's conclusion that the moving party is entitled to judgment as a matter of law for correctness. *Dick Anderson*, ¶ 21.

**DISCUSSION**

¶11    1. *Did the District Court err by concluding that JEM was required to continue performance pending approval of a change order under a contract provision that JEM claims is void as against public policy?*

¶12    The contract between JEM and Defendant Counties (the Contract) contained the following provision:

> 6.18   *Continuing Work*
>
> A.   Contractor shall carry on the Work and adhere to the Progress Schedule during all disputes or disagreements with Owner. No Work shall be delayed or postponed pending resolution of any disputes or disagreements, except as permitted by Paragraph 15.04 or as Owner and Contractor may otherwise agree in writing.

(Paragraph 6.18.) JEM asserts this provision is void under § 28-2-2116(2), MCA, which provides:

6

A provision, covenant, clause, or understanding that is in, collateral to, or affects a construction contract and that states that a party to the contract may not suspend performance under the contract or terminate the contract if another party to the contract fails to make prompt payments under the contract as provided in 28-2-2103 is against the public policy of this state and is void and unenforceable.

In turn, § 28-2-2103, MCA, requires that a construction contract contain a procedure for monthly billing by the contractor. The contractor must submit payment requests to the owner "based upon actual or estimated work performed and materials supplied during the preceding monthly billing cycle." Section 28-2-2103(1)(a), MCA. After receipt of the request, the owner has 21 days to disapprove all or a portion of the requested amount for a defined list of reasons, § 28-2-2103(1)(c), MCA, but the owner is required to pay the contractor the "approved amount" of the bill within seven days of approval. Section 28-2-2103(1)(f), MCA.

¶13    JEM argues that because Paragraph 6.18 of the Contract references "all" and "any" disputes and disagreements, it is broad enough to encompass an owner's failure to make progress payments. JEM argues that the provision thus prohibits a contractor from work stoppage when progress payments are not made in violation of § 28-2-2116, MCA, and is void. However, JEM ignores the exception stated within Paragraph 6.18: "except as permitted by Paragraph 15.04." Paragraph 15.04 explicitly provides that the contractor may terminate performance if monthly progress payments are not made. Thus, Paragraph 6.18 clearly limits its applicability to disputes that do not involve an owner's failure to make progress payments.

7

¶14 JEM then asserts that a change order nonetheless equates to a progress payment because a change order is merely a request to be paid additional sums for "work performed and materials supplied" under § 28-2-2103(1)(a), MCA. JEM thus reasons that the statutory prohibition of contracts that require a contractor to continue working despite not receiving progress payments likewise prohibits contracts that require a contractor to continue working despite not being paid for a change order. However, JEM reads the statute too broadly. Section 28-2-2103, MCA, clearly recognizes an owner's right to dispute all or part of a progress payment request for a litany of reasons, including "disputed work or materials," § 28-2-2103(1)(c)(iii), MCA, and requires an owner to promptly pay only the "approved amount." JEM's argument would turn a statute meant to protect contractors' progress payments for agreed-upon work into a mandate that owners progressively pay contractors for billed amounts regardless of work quality or conformance with the contract.

¶15 The District Court correctly rejected JEM's assertion by holding that Paragraph 6.18 is not void as against public policy under the statute, and by concluding that JEM was obligated to continue its performance under the Contract.

¶16 2. *Did the District Court err by granting summary judgment to MMI on the ground that JEM had failed to show it was harmed by the representations made by MMI?*

¶17 To succeed on either of its claims, JEM was required to prove harm as an element. *See Keil v. Glacier Park, Inc.*, 188 Mont. 455, 462, 614 P.2d 502, 506 (1980) (party asserting promissory estoppel must have been injured by the reliance on a promise); *In re Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487

(party asserting fraud must prove "consequent and proximate injury or damages caused by their reliance on the representation"). Though JEM acknowledges that there is no contract between it and MMI, it asserts that the amount it would have been owed under the Contract, but was subsequently denied, form the damages it sustained as a result of MMI's representations. Thus, JEM's claims against MMI are contingent upon benefits arising from the Contract.

¶18 MMI argued it was entitled to summary judgment because JEM could not prove that it had been harmed by MMI's alleged representations because (1) Paragraph 6.18 obligated JEM to continue working during the dispute over the change order, (2) JEM's claim for a change order was barred because JEM failed to follow the procedure outlined in the Contract governing notification of nonconforming subsurface conditions, and (3) its alleged promises that JEM would be paid for a change order if savings were made throughout the remaining work were merely "agreements to agree," rather than a clear and unambiguous promise.

¶19 After holding that Paragraph 6.18 was not void, the District Court concluded that JEM could not show that it had suffered harm as the result of MMI's representations because JEM was contractually obligated by Paragraph 6.18 to continue working on the project despite the dispute over the change order. It reasoned that "a party cannot assert claims for promissory estoppel or fraud based on allegations that a misrepresentation induced the party to do what the party's contract required them to do in any event," and thus, even if MMI had notified JEM on the first day that it would not receive a change

9

order, JEM would have been required to continue working. The court declined to consider MMI's other arguments.

¶20     JEM argues the District Court's analysis was in error for considering only the harm related to JEM's ability to stop working. JEM also alleged that it was harmed by finding cost savings on the remaining work, based upon MMI's alleged promise that JEM would be paid for the pulverization change order if savings were found elsewhere. Because JEM's profit was calculated as a percentage of the total cost per item, it suffered a loss in profit by reducing the costs of other items. Because the Contract did not obligate JEM to reduce costs on these other items, but JEM did so based upon MMI's representations, JEM argues that it sufficiently demonstrated harm to prevent summary judgment.

¶21     However, we decline to address JEM's claim of harm for lost profits in light of MMI's argument that the change order request was properly denied by reason of JEM's failure to comply with the Contract's notification procedure for nonconforming conditions. The Contract contained the following provision regarding notification of the owner upon discovery of subsurface conditions that were materially different from the conditions indicated in the Contract:

> 4.03    *Differing Subsurface or Physical Conditions*
> 
>                      .   .   .
> 
> Contractor shall notify the Owner and Engineer in writing about differing subsurface or physical conditions within **5 days of discovery** and before disturbing the subsurface as stated above. No claim for an adjustment in the contract price or contract times . . . will be valid for differing subsurface or physical conditions if procedures of this paragraph 4.03 are not followed.

(Emphasis in original.)

¶22    JEM did not provide written notice to Defendant Counties until 18 days after discovery of the allegedly differing conditions, and during that time proceeded to disrupt and remove the subsurface material at issue.  MMI raised this defense before the District Court and before this Court.  JEM has presented no reason why its failure to comply with the Contract notification procedure should not bar its claim under the clear language that "[n]o claim for an adjustment in the contract price . . . will be valid for differing subsurface or physical conditions if procedures of this paragraph 4.03 are not followed."

¶23    Even if the District Court erred by failing to consider JEM's argument that it was harmed by losing profits, we nonetheless conclude that summary judgment in favor of MMI was appropriate for the reasons stated above.  *See Knutson v. State*, 211 Mont. 126, 129, 683 P.2d 488, 490 (1984) ("Although the reason given by the District Court in granting summary judgment was incorrect, its result can be sustained under the wrong-reason, right-result appellate rule.").  It is undisputed that JEM failed to follow the specific notification procedure in the Contract for differing subsurface conditions that was required for payment.

¶24    Affirmed.

                                                            /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON

11