
DA 13-0241

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 117

---

ABRAHAM B. MORROW and BETTY JEAN MORROW,

        Plaintiffs and Appellants,

    v.

BANK OF AMERICA, N.A., BAC HOME LOANS
SERVICING, LP, fka COUNTRYWIDE HOME
LOANS SERVICING, LP,

        Defendants and Appellees.

---

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 2011-491
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            David K. W. Wilson, Jr. (argued), Morrison, Sherwood, Wilson & Deola, PLLP, Helena, Montana

            John Heenan, Bishop and Heenan, Billings, Montana

        For Appellees:

            Kenneth K. Lay (argued), Christopher K. Oliveira, Crowley Fleck PLLP, Helena, Montana

        For Amicus Montana Legal Services Association:

            Flint Murfitt, Robert Olsen, Lawson Konvalinka, Montana Legal Services Association, Helena, Montana

        For Amicus State of Montana Department of Justice:

            Timothy C. Fox, Montana Attorney General, Chuck Munson, Assistant Attorney General, Helena, Montana

For Amicus Montana Bankers Association:

    Doug James, Adam J. Tunning, Moulton Bellingham P.C.,
    Billings, Montana

For Amicus National Association of Consumer Advocates:

    James C. Sturdevant, The Sturdevant Law Firm, P.C.,
    San Francisco, California

    Jonathan McDonald, Dix, Hunt & McDonald, Helena, Montana

Argued and Submitted:  November 13, 2013
Decided:  May 7, 2014

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Abraham B. Morrow and Betty Jean Morrow appeal from an order of the First Judicial District Court, Lewis and Clark County, granting Defendant Bank of America's motion for summary judgment. We affirm in part, reverse in part, and remand.

¶2 The following issues are presented for review:

¶3 *Issue One: Whether the District Court erred in finding the Morrows failed to establish the existence of an oral contract for modification of their loan.*

¶4 *Issue Two: Whether the District Court erred in finding that Bank of America owed no common law or fiduciary duty to the Morrows.*

¶5 *Issue Three: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim of negligent misrepresentation.*

¶6 *Issue Four: Whether the District Court erred in finding that the Statute of Frauds precluded the Morrows' claims of actual fraud, constructive fraud, and violations of the Montana Consumer Protection Act.*

¶7 *Issue Five: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim of actual fraud.*

¶8 *Issue Six: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim of constructive fraud.*

¶9 *Issue Seven: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim under the Montana Consumer Protection Act.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶10 Abraham B. Morrow and Betty Jean Morrow, husband and wife, are the owners of a home on fifty acres of land outside White Sulphur Springs, Montana. The Morrows, who are from South Carolina, built the home in 2006 and planned to spend their retirement there. This case arises from the Morrows' attempts to secure a modification of

3

their home loan, serviced by Bank of America, through the federal Home Affordable Modification Program (HAMP).

¶11 HAMP is intended to help homeowners in default or at immediate risk of default on their home loans by modifying their monthly payments to affordable levels. The program requires participating loan servicers to execute a servicer participation agreement and service eligible loans according to a uniform modification process. The process begins with a Trial Period Plan, under which the homeowner makes reduced payments for three months, while the loan servicer verifies income and other eligibility information. At the end of the trial period, if the homeowner has successfully made the trial payments and if eligibility has been verified, the modification is made permanent. At the time relevant to the Morrows' claims, only loans secured by the borrower's primary residence were eligible for HAMP.

¶12 The Morrows' home was financed by Quicken Loans for $291,200.00, secured by a deed of trust. The loan was to be repaid over a fifteen-year term at 4.99% interest, with monthly payments of $2,301.28. The loan was subsequently sold to Countrywide. Bank of America is the successor by merger to Countrywide and BAC Home Loans Servicing, LP.

¶13 In 2009, the Morrows lost most of their anticipated retirement income when the purchaser of two businesses they had owned in South Carolina defaulted on his payments. The Morrows resumed control of one of the businesses and returned to South Carolina to manage it until they could find a new buyer. From February 2009 until May 2012, they spent most of their time in South Carolina, returning to the Montana property

4

for only six to eight weeks of each year. The Morrows first contacted Bank of America to discuss a modification of their loan in May 2009, beginning a process that would continue for nearly two years.

¶14 The Morrows remained current on their payments until November 2009. They claim that in October 2009, a Bank of America employee informed them they should intentionally miss the following month's payment to become eligible for a modification. Bank of America denies its employees would instruct a borrower to intentionally default, and argues that the Morrows defaulted because they could not afford their payments.

¶15 On December 8, 2009, the Morrows spoke with Sunil Kumar, a Bank of America representative from Hyderabad, India, who identified himself as "Brian." According to the Morrows, Kumar told them they were "locked" for a modification with trial payments of $1,239.99. Kumar explained to the Morrows they would be required to make the trial payments for three to four months. At the end of that period, if the Morrows had successfully made the trial payments, the modification would be made permanent. The modification, according to the Morrows, extended the period of the loan from fifteen to forty years and reduced the interest rate from 4.99% to 2%. The Morrows believed the modification had been approved, subject to execution of the documents and completion of the trial period. Bank of America claims the Morrows were informed during this conversation that they were only applying for a modification and had not yet been approved. Kumar has no specific recollection of his conversation with the Morrows, but denies he would tell a customer over the phone that they were approved for a modification.

5

¶16 The Morrows made their first trial payment of $1,239.99 in December 2009. They also submitted financial documentation including their tax return, bank statement, and employment verification. On February 16, 2010, Bank of America sent the Morrows a notice of intent to accelerate indicating their loan was in default. Mr. Morrow claims he called Bank of America on March 2, 2010 and spoke with an employee named "Ron," who instructed him to ignore the letter and continue making the reduced payments. Bank of America records indicate that on March 2, 2010, an employee named Rohitash S. Banerjee advised Mr. Morrow that the account was under review. Banerjee also noted that the Morrows intended to pay the trial amount by the end of the month. The Morrows continued to make monthly payments of $1,239.99 until February 2011.

¶17 On March 3, 2010, the day after Banerjee informed Mr. Morrow his account was under review, Bank of America issued another notice of intent to accelerate. On March 16, 2010, Bank of America sent a letter to the Morrows acknowledging receipt of the financial information they had submitted in December 2009. The letter, issued over ninety days after the Morrows had sent their financial information to Bank of America, also indicated that "receipt of your documentation starts the review process, which may take up to 45 days to complete."

¶18 On April 22, 2010, Bank of America sent a form letter to the Morrows inviting them to apply for HAMP. The letter stated:

> Once we receive all of your documents, we will validate your information and check your eligibility. You can expect to hear back from us within 10 business days. If you qualify for the program, you will enter a three month Trial Period Plan where you will make a monthly trial period payment for three months. . . . You will receive a permanent modification if you

6

> successfully make all of your Trial Period Plan payments and you are notified in writing that your modification has been approved.
>
> .  .  .
>
> As long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings. If foreclosure proceedings have already started, we will not conduct a foreclosure sale as long as you comply with the terms of the Trial Period Plan.

According to the Morrows, by the time they received this letter, they had already been making trial payments for at least four months.

¶19   On May 24, 2010, the Morrows filled out a Request for Modification and Affidavit as required under HAMP. The Morrows certified that the property was owner-occupied and they intended to reside there for the next twelve months. On May 26, 2010, Bank of America sent the Morrows a letter requesting additional documentation. On July 8, 2010, Bank of America sent the Morrows another notice of intent to accelerate. On August 6, 2010, the Morrows received another request for additional documentation, and on August 31, 2010, they received another notice of intent to accelerate. The Morrows claim each time they received a notice, they contacted Bank of America, and each time, a Bank of America employee instructed them to ignore the notice and continue making the modified payments.

¶20   In October 2010, the Morrows were informed their modification had been denied due to missing or incomplete paperwork. Mr. Morrow filed a complaint with the Office of the Comptroller of the Currency. Bank of America assigned a liaison, Luke Mai, to handle the Morrows' account. Mr. Morrow claims that in December 2010, Mai informed him over the phone that the modification had been approved. Mai does not recall his

conversations with Mr. Morrow, but claims it is not his standard practice to verbally approve a modification for clients.

¶21 On January 11, 2011, the Morrows received another letter indicating their modification had been denied. In February 2011, Bank of America rejected the Morrows' payment of $1,239.99 and scheduled a trustee's sale of the property. The Morrows' complaints to Bank of America were assigned to unit manager Jesse Vasquez. On March 23, 2011, Vasquez explained that the modification had been denied because the Morrows appeared to reside in South Carolina, and the Montana property was not their primary residence.

¶22 The Morrows filed a complaint in the District Court of Lewis and Clark County on May 6, 2011, which was later amended to state the following claims: oral contract established and breached; negligence, negligent misrepresentation, and tortious breach of the covenant of good faith and fair dealing; fraud; and violation of the Montana Consumer Protection Act (MCPA). Both parties moved for summary judgment, and the District Court granted summary judgment to Bank of America on April 3, 2013.

¶23 The District Court first concluded that the Morrows' breach of contract claim was barred by the Statute of Frauds, which requires certain contracts to be made in writing. The District Court also rejected the Morrows' claims of negligence, negligent misrepresentation, and tortious breach of the covenant of good faith and fair dealing, concluding Bank of America owed no duty to the Morrows. The District Court concluded that the Morrows' claims for fraud and violation of the MCPA were also barred by the Statute of Frauds, because they presented alternative theories of

8

enforcement of the oral agreement to modify the loan. The Morrows appealed to this Court, seeking reversal of the grant of summary judgment.

## STANDARD OF REVIEW

¶24 We review a district court's grant of summary judgment de novo, applying the same criteria as the district court under M. R. Civ. P. 56(c). *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 11, 366 Mont. 285, 291 P.3d 1082. Summary judgment is appropriate where no genuine issues of material fact exist and where the moving party is entitled to judgment as a matter of law. *Clark v. Eagle Sys.*, 279 Mont. 279, 283, 927 P.2d 995, 997 (1996). The moving party must establish there is no genuine factual issue which would entitle the non-moving party to recover. *Clark*, 279 Mont. at 283, 927 P.2d at 997. If the moving party meets this burden, the non-moving party must then present evidence, in affidavits or other sworn testimony, demonstrating a genuine factual issue exists. *Yarbro, Ltd. v. Missoula Fed. Credit Union*, 2002 MT 152, ¶¶ 9-10, 310 Mont. 346, 50 P.3d 158. All reasonable inferences from the factual record must be drawn in favor of the non-moving party. *Clark*, 279 Mont. at 284, 927 P.2d at 998. Summary judgment is an extreme remedy, which should never take the place of a trial. *Clark*, 279 Mont. at 283, 927 P.2d at 997.

## DISCUSSION

¶25 *Issue One: Whether the District Court erred in finding that the Morrows failed to establish the existence of an oral contract for modification of their loan.*

¶26 A promissory note is a written contract, and may be modified in writing or by an executed oral agreement. Section 28-2-1602, MCA; *Nimmick v. Hart*, 248 Mont. 1, 14,

808 P.2d 481, 490 (1991). An executed oral agreement exists where the obligations of both parties have been fully performed, and nothing remains to be done by either party. *Winkel v. Fam. Health Care, P.C.*, 205 Mont. 40, 45, 668 P.2d 208, 210 (1983); *Hart v. Billings Pub. Stockyards*, 157 Mont. 345, 356-57, 486 P.2d 120, 126 (1971); *Contl. Oil Co. v. Bell*, 94 Mont. 123, 134, 21 P.2d 65, 67 (1933). Performance by only one party is not sufficient. *See e.g. Contl. Oil Co.*, 94 Mont. at 134, 21 P.2d at 67.

¶27 The Morrows claim that Bank of America offered to modify their home loan by reducing the interest rate and reamortizing the payments over forty years. The modified terms were never reduced to writing. Therefore, the agreement is enforceable only if it was fully executed, with nothing left to be done by either party. Section 28-2-1602, MCA; *Winkel*, 205 Mont. at 45, 668 P.2d at 210. The oral agreement contemplated that Bank of America would perform by finalizing the modification of the Morrows' loan and issuing documents reflecting their new repayment status. The Morrows were expected to perform by repaying the loan obligation under the modified terms. Undisputedly, Bank of America has not issued new documents reflecting the permanent modification, and the Morrows have not satisfied their repayment obligation. The oral agreement was not fully executed, and therefore the written contract was not validly modified. Section 28-2-1602, MCA.

¶28 Moreover, a mortgage or deed of trust "can be created, renewed, or extended only by writing, with the formalities required in the case of a grant of real property." Section 71-1-203, MCA; § 71-1-305, MCA (deed of trust subject to all laws relating to mortgages). An agreement to extend the time for repayment of a debt secured by a

10

mortgage or deed of trust is within the scope of § 71-1-203, MCA. *See Register Life Ins. Co. v. Kenniston*, 99 Mont. 191, 193-96, 43 P.2d 251, 252-53 (1935); *Hastings v. Wise*, 89 Mont. 325, 337-40, 297 P. 482, 484-85 (1931); *Vitt v. Rogers*, 81 Mont. 120, 126-30, 262 P. 164, 165-67 (1927); *O.M. Corwin Co. v. Brainard*, 80 Mont. 318, 324-25, 260 P. 706, 708 (1927).

¶29    That section, unchanged since its adoption in 1895,

> contemplates the making of a contract assented to by the parties: the delivery by the mortgagor to the mortgagee of the mortgage, or renewal or extension. In order that notice of the existence of the mortgage, or renewal, or extension may be given to subsequent purchasers and mortgagees, the instrument must be filed with the county clerk for record.

*O.M. Corwin Co.*, 80 Mont. at 324, 260 P. at 708. This effects the historic purpose of the Statute of Frauds and recording statutes, which serve to "'give security and certainty to titles.'" *Hinebauch v. McRae*, 2011 MT 270, ¶ 23, 362 Mont. 358, 264 P.3d 1098 (quoting *Great Falls Waterworks Co. v. Great N. Ry.*, 21 Mont. 487, 500, 54 P. 963, 967 (1898)).

¶30    The Morrows' original promissory note provided for a repayment period of fifteen years. Mr. Morrow claims that Bank of America offered a modification which would have reamortized the loan over a period of forty years. The Morrows' deed of trust states that it secures repayment of "all renewals, extensions, and modifications of the Note." It also states that the debt is to be paid in full by May 1, 2023. The purported oral agreement extended the life of the security by twenty-five years, presumably to May 1, 2048. Such an extension must be made in writing, "with the formalities required in the case of a grant of real property." Section 71-1-203, MCA. The agreement to extend the

11

debt, and thereby the security for the debt, was neither written nor recorded, and its enforcement would create substantial uncertainty in the land records. We affirm the order of the District Court granting summary judgment to Bank of America on the Morrows' breach of contract claim.

¶31    The Morrows also claim that Bank of America tortiously breached the covenant of good faith and fair dealing. Implied in every contract is a covenant of good faith, which requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA; *Story v. Bozeman*, 242 Mont. 436, 451, 791 P.2d 767, 776 (1990), *overruled in part*, *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250. A claim may be brought for tortious breach of the covenant where a special relationship exists between the parties. *Story*, 242 Mont. at 451, 791 P.2d at 776. The existence of a contract, however, is a prerequisite to a claim for tortious breach of the covenant. *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 18, 340 Mont. 62, 172 P.3d 116. While an original contract existed between the parties, the Morrows' claim is not based on this contract, but on the breach of the alleged oral contract to modify their loan. Therefore, we also affirm the order of the District Court granting summary judgment to Bank of America on the Morrows' claim for tortious breach of the implied covenant of good faith and fair dealing.

¶32    *Issue Two: Whether the District Court erred in finding that Bank of America owed no common law or fiduciary duty to the Morrows.*

¶33    We next address the Morrows' claims of negligence. A plaintiff in an action for negligence must offer proof of a duty, breach of that duty, causation, and damages.

12

*Hatch v. Dept. of Hwys.*, 269 Mont. 188, 192, 887 P.2d 729, 732 (1994). The existence of a duty is a question of law for determination by the court. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601. Once a duty has been established, the breach of that duty is a question of fact to be resolved by a jury. *Nelson v. Driscoll*, 1999 MT 193, ¶ 40, 295 Mont. 363, 983 P.2d 972 (citing *Smith v. Kerns*, 281 Mont. 114, 117, 931 P.2d 717, 719 (1997)).

¶34 We recognize at the outset that a bank has no duty to modify or renegotiate a defaulted loan. *Mont. Bank, N.A. v. Ralph Meyers & Son, Inc.*, 236 Mont. 236, 244, 769 P.2d 1208, 1213 (1989). Furthermore, "[t]he relationship between a bank and its customer is generally described as that of a debtor and creditor and as such does not give rise to fiduciary responsibilities." *Deist v. Wachholz*, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984) (internal citation omitted). However, where a bank goes beyond the ordinary role of a lender of money and actively advises customers in the conduct of their affairs, the bank may owe a fiduciary duty. *Deist*, 208 Mont. at 216-17, 678 P.2d at 193.

¶35 The complexity of modern banking and credit transactions, in particular, may "'thrust a bank into the role of an advisor, thereby creating a relationship of trust and confidence . . . .'" *Deist*, 208 Mont. at 216, 678 P.2d at 193 (quoting *Tokarz v. Frontier Fed. Sav. & Loan Assn.*, 656 P.2d 1089, 1092 (Wash. App. Div. 3 1982)). A bank owes a fiduciary duty only when it gives advice "other than that common in the usual arms-length debtor/creditor relationship." *Coles Dept. Store v. First Bank, N.A.*, 240 Mont. 226, 229, 783 P.2d 932, 934 (1989). We have found a fiduciary duty where the borrower has relied on the bank's advice in financial matters over the course of a long and

13

exclusive relationship. *Deist*, 208 Mont. at 217-18, 678 P.2d at 193-94 (finding fiduciary relationship where widow had been advised by bank officer for over twenty years).

¶36 If the borrower has not been advised by the bank or has not relied on that advice, no fiduciary relationship exists. *Coles Dept. Store*, 240 Mont. at 230, 783 P.2d at 934 (no fiduciary duty where decisions about management of department store were made with little, if any, input from bank); *Simmons v. Jenkins*, 230 Mont. 429, 433-34, 750 P.2d 1067, 1070 (1988) (no fiduciary duty where there was no evidence bank ever advised plaintiffs); *Pulse v. N. Am. Land Title Co.*, 218 Mont. 275, 283, 707 P.2d 1105, 1110 (1985) (no fiduciary duty where terms of sale were not a product of the bank's advice). No fiduciary duty arises if the borrower is also advised by others, such as legal counsel. *Simmons Oil Corp. v. Holly Corp.*, 258 Mont. 79, 85, 852 P.2d 523, 526 (1993). Even if a fiduciary duty exists, a bank is not obligated to avoid foreclosure. *Richland Natl. Bank & Trust v. Swenson*, 249 Mont. 410, 418, 816 P.2d 1045, 1050 (1991). A bank may also refuse to modify or renegotiate a loan for "solid business reasons." *See Lachenmaier v. First Bank Sys.*, 246 Mont. 26, 34, 803 P.2d 614, 619 (1990) (citing *Tresch v. Norwest Bank*, 238 Mont. 511, 515, 778 P.2d 874, 876 (1989)).

¶37 The Morrows have alleged facts which, if proven, would establish that Bank of America owed them a fiduciary duty.[1] The Morrows claim Bank of America advised them it would be in their best interests to deliberately miss a payment and default on their

---

[1] To determine "a special relationship in cases where it normally does not exist—such as between a bank and a customer—a court may be required to make a fact-intensive inquiry." *Gliko v. Permann*, 2006 MT 30, ¶ 24, 331 Mont. 112, 130 P.3d 155. However, the conclusion drawn from the facts that a fiduciary duty exists is a question of law. *Gliko*, ¶ 24.

14

loan. The Morrows contend they relied on this advice when they intentionally defaulted on their mortgage hoping to qualify for a modification. The Morrows were not advised by any other parties when they made this decision. The pattern of active advising alleged by the Morrows continued for over a year, with regular and frequent contacts between the parties. Throughout this period, the Morrows claim Bank of America continued to advise them to pay a reduced amount each month and ignore notices of default. Instructing a borrower not to repay a loan, to pay less than the amount required by the loan documents, or to ignore notices of impending foreclosure and avoid curing a default is not the type of advice "common in the usual arms-length debtor/creditor relationship." *Coles Dept. Store*, 240 Mont. at 229, 783 P.2d at 934. While the Morrows stood at arm's length to their lender in negotiating the initial loan, once their loan was in default they had little choice but to continue placing their trust in the bank. *See Lachenmaier*, 246 Mont. at 34, 803 P.2d at 619 (no fiduciary relationship where borrower could transfer loans elsewhere). It is unrealistic to say Bank of America and the Morrows continued to hold equal footing throughout the negotiations. *See Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981) ("while a bank and its customer may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this equality of position carries over into the area of loan processing . . . .").

¶38 The recent foreclosure crisis has led to many cases alleging breaches of duty by mortgage servicers, and these cases have not reached uniform results. *Compare Ansanelli v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 32350 at \*\*21-22 (N.D. Cal. March 28, 2011) (No. C 10-03892 WHA), *with Lueras v. BAC Home Loans*

15

*Servicing, LP*, 163 Cal. Rptr. 3d 804, 820 (Cal. App. 4th Dist. 2013).  Some courts have held that a mortgage servicer actively engaging with a borrower, particularly in the modification context, stands in a different relation to the borrower than does a traditional "silent lender." *Ansanelli*, 2011 U.S. Dist. LEXIS at **21-22.  Those courts have found, as we do today, that special circumstances, if proven, could support a fiduciary duty where "Defendant went beyond its conventional role as a loan servicer by soliciting Plaintiffs to apply for a loan modification and by engaging with them for several months . . . ." *Crilley v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 58469 at **27-29 (D. Haw. April 26, 2012) (Civil No. 12-00081 LEK-BMK); *Ansanelli*, 2011 U.S. Dist. LEXIS at **21-22.

¶39    We repeat that the duty owed by Bank of America was not the duty to avoid foreclosure or to grant a modification of the loan.  *Richland Natl. Bank & Trust,* 249 Mont. at 418, 816 P.2d at 1050; *Lachenmaier*, 246 Mont. at 34, 803 P.2d at 619 (citing *Tresch*, 238 Mont. at 515, 778 P.2d at 876).  Under the facts alleged, Bank of America owed a duty to manage the modification process in a manner that would not cause the Morrows to suffer loss or injury by reason of its negligence.  The Morrows allege that on several occasions, Bank of America said their application would be processed under HAMP.  While HAMP does not provide a private right of action and does not itself create a duty of care, reference to its provisions may provide evidence of a breach of an already existing duty.  *Mackenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 495-96 (1st Cir. 2013).  Drawing all reasonable inferences in the Morrows' favor, we conclude they may proceed to trial on the theory that Bank of America owed them a fiduciary duty in the processing

16

of their application for a loan modification. Accordingly, we look to the federal guidelines in effect when their loan was under consideration to further define the standards to which Bank of America had to conform its conduct, if the evidence establishes the basis for imposition of such a duty.[2]

¶40 Servicers participating in HAMP "should provide the borrower with information designed to help them understand the modification terms that are being offered and the modification process." Introduction of the Home Affordable Modification Program, Supp. Directive 09-01 at *13 (U.S. Treas. Dept., April 6, 2009). Communications with the borrower should minimize potential confusion and reduce the risks associated with the transaction. Supp. Directive 09-01 at *13. Servicers should respond to inquiries and complaints with "timely and appropriate responses and resolution." Supp. Directive 09-01 at *13. The trial payment period that comprises the first step of a HAMP modification is "three months in duration," during which the servicer must service the loan "in the same manner as it would service a loan in forbearance." Supp. Directive 09-01 at *17. The servicer is also responsible for determining the borrower's eligibility. Supp. Directive 09-01 at *15. If the servicer determines the borrower is not eligible, the

---

[2] The Comptroller of the Currency of the United States examined Bank of America's residential foreclosure processes, as a result of which the Bank stipulated to the issuance of a Consent Order. Though not determinative of this action, the Consent Order contains findings consistent with the Morrows' allegations. The Consent Order notes that Bank of America failed to devote appropriate resources, oversight, and training to its foreclosure processes. The Consent Order required the Bank to develop a plan to ensure compliance with federal servicing guides, including those pertaining to HAMP. In re Bank of Am., N.A., Consent Order No. AA-EC-11-12 (U.S. Office of the Comptroller of the Currency, April 13, 2011).

servicer must "promptly communicate" that information to the borrower. Supp. Directive 09-01 at *15.

¶41    The facts alleged by the Morrows, if proven, would demonstrate that Bank of America failed to provide them with accurate information about the modification process; failed to minimize the confusion and risk associated with the modification; and failed to timely respond and resolve their inquiries and complaints. The Morrows also allege that Bank of America placed the loan in default, rather than in forbearance; failed to determine eligibility within the usual three-month period; and failed to promptly communicate its eligibility decision. The Morrows claim Bank of America's excessive delays in processing the modification significantly increased the deficiency they owed, making foreclosure all but inevitable.

¶42    Bank of America contests these factual allegations, claiming it accurately explained to the Morrows the servicing status of their loan; did not initiate foreclosure until after the application for modification had been denied; and was justified in taking several months to process the application because the Morrows' documentation raised questions about their residency status. Bank of America also denies advising the Morrows to miss a payment or ignore notices of default. It is evident there are genuine issues of material fact regarding the Morrows' claim for negligence. The District Court erred by granting summary judgment to Bank of America, and we reverse.

¶43  *Issue Three: Whether the District Court erred by granting summary judgment to Bank of America on the Morrows' claim of negligent misrepresentation.*

¶44  In addition to allegations that Bank of America was negligent in its processing of their application for modification, the Morrows allege Bank of America negligently misrepresented the status of their loan.  The District Court did not address the Morrows' claim of negligent misrepresentation in its original Order.  It then issued an Addendum to that Order, in which it stated, "For the reasons set forth in the Court's discussion of the negligence and fraud counts, summary judgment is also granted to Defendants on the claim of negligent misrepresentation."  The District Court failed to address the specific elements of a negligent misrepresentation claim, as distinct from either negligence or fraud.  We address those elements here.

¶45  We have adopted the following definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552 (1977); *State Bank v. Maryann's*, 204 Mont. 21, 33, 664 P.2d 295, 301 (1983); *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 197 Mont. 1, 12, 640 P.2d 453, 458-59 (1982).  In *Kitchen Krafters v. Eastside Bank*, we expanded upon this definition by adopting the following elements of negligent misrepresentation:

a) the defendant made a representation as to a *past* or *existing* material fact;

b) the representation must have been untrue;

19

c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

f) the plaintiff, as a result of its reliance, must sustain damage.

*Kitchen Krafters v. Eastside Bank*, 242 Mont. 155, 165, 789 P.2d 567, 573 (1990), *overruled in part*, *Busta v. Columbus Hosp.*, 276 Mont. 342, 370, 916 P.2d 122, 139 (1996). Since *Kitchen Krafters* was decided, we have continued to cite both the original language of the Restatement and the *Kitchen Krafters* elements. *Compare Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 25, 365 Mont. 71, 278 P.3d 1002 (citing *Kitchen Krafters* elements), *with W. Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 35, 359 Mont. 34, 249 P.3d 35 (citing *Restatement (Second) of Torts* § 552), *and Mattingly v. First Bank*, 285 Mont. 209, 215-16, 947 P.2d 66, 70 (1997) (citing both *Kitchen Krafters*, 242 Mont. at 165, 789 P.2d at 573, and *Restatement (Second) of Torts* § 552).

¶46    The Restatement definition tends to focus on business transactions. *Restatement (Second) of Torts* § 552. We have recognized that negligent misrepresentations may occur outside of this context. *Jackson v. Dept. of Fam. Servs.*, 1998 MT 46, ¶ 36, 287 Mont. 473, 956 P.2d 35 (applying *Kitchen Krafters* elements of negligent misrepresentation to claims by prospective parents about adoption process). At the same time, we have continued to apply the Restatement definition, particularly in the context of professional negligence. *W. Sec. Bank*, ¶ 35 (applying Restatement definition to

negligent misrepresentation claims against accountant). We are faced today with defining the appropriate duty of care owed by a bank to its customers, and so we find it necessary to resolve this disparity with respect to banking transactions. We hold that a claim of negligent misrepresentation against a financial institution is governed by the definition in the Restatement (Second) of Torts § 552, which we adopted in *State Bank*, 204 Mont. at 33, 664 P.2d at 301, and *Brown*, 197 Mont. at 12, 640 P.2d at 459-60.

¶47 The Morrows allege Bank of America made several false statements regarding the servicing of their existing loan and the status of their application for modification: in October 2009, Bank of America told the Morrows they should intentionally default on their payments to be considered for a modification; in December 2009, Sunil Kumar said they were approved for a HAMP modification, which would be finalized subject to the trial payment period; in March 2010, Rohitash S. Banerjee told them to disregard notices of default and impending foreclosure and continue making reduced payments; and in December 2010, Luke Mai said their modification had been approved. Bank of America claims these statements were never made, demonstrating the existence of genuine issues of material fact. Bank of America also insists the Morrows' modification was never approved, and that instructing a borrower to default is contrary to its policies and procedures.

¶48 The alleged statements were made in the course of Bank of America's business as a loan servicer for the guidance of the Morrows in their loan transaction. Bank of America argues that the Morrows suffered no pecuniary loss because of its alleged misconduct. The Morrows have asserted losses including lost time from Mr. Morrow's

accounting work, travel expenses, loss of personal lines of credit, and increased costs due to negative credit reporting. The Morrows cannot recover for losses related to credit reporting, because state statutory causes of action premised on damages directly related to a bank's credit reporting duties are preempted by the Fair Credit Reporting Act. 15 U.S.C. § 1681t(b)(1)(F) (2006); *Feller v. First Interstate Bancsystem, Inc.*, 2013 MT 90, ¶ 23, 369 Mont. 444, 299 P.3d 338. The validity of the Morrows' remaining damages is a question for determination by a finder of fact. *See Rohrer v. Knudson*, 2009 MT 35, ¶ 32, 349 Mont. 197, 203 P.3d 759.

¶49 Bank of America also argues the Morrows did not rely on the information it supplied. Bank of America argues the Morrows' continuing default was simply due to their inability to afford the payments. The Morrows have offered testimony that at the time Bank of America instructed them to default, they had the financial resources available to continue making payments for the immediate future, and therefore defaulted only at Bank of America's direction. A genuine issue of material fact exists as to whether the Morrows' default was caused by their reliance on Bank of America's alleged misrepresentations.

¶50 Bank of America further argues that any reliance by the Morrows was not justified, because they knew their modification had not been approved. The Morrows have presented evidence of confusing and directly conflicting communications from Bank of America. These communications informed the Morrows in one instance that their modification was pending and in another that it was approved. They were told by mail their loan was in default, but over the phone that they were in a modification status.

22

In essence, Bank of America claims the Morrows were entitled to rely on one set of statements, but not the other. The conflicting communications issued by Bank of America raise genuine questions of material fact regarding whether the Morrows' reliance was justified.

¶51 Finally, the allegations by the Morrows raise questions of fact regarding whether Bank of America "exercise[d] reasonable care or competence in obtaining or communicating the information." *Restatement (Second) of Torts* § 552. At the least, the Morrows' allegations that they received directly conflicting information from Bank of America regarding the status of their loan indicates a lack of reasonable care in communicating the information. The District Court erred in granting summary judgment to Bank of America on the Morrows' claim of negligent misrepresentation. We reverse.

¶52 *Issue Four: Whether the District Court erred in finding that the Statute of Frauds precluded the Morrows' claims of actual fraud, constructive fraud, and violations of the Montana Consumer Protection Act.*

¶53 The District Court concluded that, because enforcement of the alleged oral contract was precluded by the Statute of Frauds, the same was true of the Morrows' fraud-related claims. We have held that "[t]he Statute of Frauds applies to liabilities based on contract, and not to theories of liabilities based on fraud or negligent misrepresentation." *Phil-Co Feeds v. First Natl. Bank*, 238 Mont. 414, 421, 777 P.2d 1306, 1311 (1989). The Statute of Frauds is a bar to the enforcement of certain oral contracts, but it is not a rule of evidence, and it does not preclude admission of evidence of an oral agreement for other purposes. *LaBarre v. Shepard*, 84 F.3d 496, 500 (1st Cir. 1996); *Restatement (Second) of Contracts* § 143 (1981) ("The Statute of Frauds does not

23

make an unenforceable contract inadmissible in evidence for any purpose other than its enforcement in violation of the statute.").

¶54 As its name suggests, the Statute of Frauds is primarily concerned with the prevention of fraud. *Hinebauch*, ¶ 23. The Statute of Frauds cannot "'be used as a shield or cloak to protect fraud, or as an instrument whereby to perpetrate a fraud, or as a vehicle or means of culpable wrong, injustice, or oppression.'" *State ex rel. Farm Credit Bank v. Dist. Ct.*, 267 Mont. 1, 26-27, 881 P.2d 594, 609 (1994) (quoting 73 Am. Jur. 2d *Statute of Frauds* § 562 (1974)). A claim of fraud is therefore not barred by the Statute of Frauds, even if the claim relies on evidence of an oral agreement that would be unenforceable in contract. *See Phil-Co Feeds*, 238 Mont. at 421, 777 P.2d at 1311; 37 Am. Jur. 2d *Fraud and Deceit* § 92 ("False representations of existing or current facts are actionable even if combined with promises as to future events."). Nevertheless, a claim of fraud may not serve as an alternative means of enforcing an oral agreement within the Statute of Frauds, because "'the breach of a promise which the law does not regard as binding is not a fraud.'" *Austin v. Cash*, 274 Mont. 54, 62, 906 P.2d 669, 674 (1995) (quoting *Schwedes v. Romain*, 179 Mont. 466, 473, 587 P.2d 388, 392 (1978)).

¶55 The Morrows are not merely seeking to enforce an oral agreement. Independent of their allegations that Bank of America promised to grant them a modified loan, they also allege Bank of America misrepresented the status of their existing loan and serviced that loan in an unfair and deceptive manner. The District Court erred in concluding that the Statute of Frauds precluded the Morrows' claims of actual fraud, constructive fraud, and violations of the MCPA. We now address the merits of each of these claims in turn.

¶56    *Issue Five: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim of actual fraud.*

¶57    A party asserting a claim of actual fraud must establish the following elements:

> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*Franks v. Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487. Once a prima facie case is established, "[a]ctual fraud is always a question of fact." *Franks*, ¶ 18 (citing § 28-2-404, MCA).

¶58    The Morrows' claim of fraud rests on the same factual allegations as their claim of negligent misrepresentation. *Supra* ¶ 47. We have already noted in our discussion of negligent misrepresentation that the Morrows' allegations raise genuine issues of material fact regarding whether Bank of America made false representations; whether the Morrows knew of the falsity of the representations; whether the Morrows relied on those representations; whether their reliance was justified; and whether they were damaged as a result. *Supra* ¶¶ 47-50. As we also noted, it does not appear to be contested that the statements, if made, were intended to guide the Morrows in repaying their loan. *Supra* ¶ 48. Under the facts alleged, it is clear the statements were material in that they led directly to the Morrows' default and subsequent foreclosure proceedings.

¶59 The Morrows must also show that Bank of America made the alleged statements with knowledge of their falsity or ignorance of their truth. *Franks*, ¶ 17. The Dissent argues that evidence of a fraudulent intent or intent to deceive is required to establish a prima facie case of actual fraud. Dissent, ¶ 89. Fraud does not require knowledge of the statement's falsity. *Franks*, ¶ 17. The requisite knowledge may also be established where the defendant is ignorant of whether the statement is true. *Franks*, ¶ 17. A statement made with "reckless disregard for the truth" is sufficient. *Brown*, 197 Mont. at 11, 640 P.2d at 458. The "intent to deceive or dishonesty of purpose" to which our cases have referred pertains to the "fifth element," which is the defendant's intent that its statement be relied upon. *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, ¶ 28, 347 Mont. 267, 198 P.3d 796. Thus, the Morrows must establish that Bank of America "made a representation with the 'intent it be relied upon' to satisfy the intent element of a prima facie fraud claim." *W. Sec. Bank*, ¶ 61 (citing *Durbin v. Ross*, 276 Mont. 463, 469, 916 P.2d 758, 762 (1996)).

¶60 The Morrows have produced evidence of a multitude of conflicting communications from Bank of America regarding the status of both their existing loan and their application for a modification. They have also produced evidence of communications regarding Bank of America's loan servicing policies, which Bank of America says do not accurately represent its policies. This evidence raises genuine issues of material fact regarding whether the representatives who allegedly made these statements did so despite their ignorance of whether the statements were true. The Morrows have stated a prima facie case of fraud, and the factual issues they have raised

should now be resolved by a jury. *Franks*, ¶ 18. We therefore reverse the order of the District Court granting summary judgment to Bank of America on the Morrows' claim of actual fraud.

¶61 *Issue Six: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim of constructive fraud.*

¶62 Constructive fraud is a breach of duty which, without fraudulent intent, creates an advantage for the breaching party by misleading another person to that person's prejudice. Section 28-2-406, MCA. The Dissent argues that constructive fraud, as defined by statute, provides only grounds for rescinding a contract. Dissent, ¶ 95. We find several cases allowing a plaintiff to seek damages for constructive fraud independently of any action to rescind a contract. *Mattingly*, 285 Mont. at 218-20, 947 P.2d at 71-73 (recognizing claim for constructive fraud where no request for rescission was brought); *Lee v. Armstrong*, 244 Mont. 289, 295, 798 P.2d 84, 88 (1990) (awarding damages for actual and constructive fraud where defendant was not a party to the contract; damages were therefore "clearly not rescission or breach of contract damages"); *McGregor v. Mommer*, 220 Mont. 98, 108-09, 714 P.2d 536, 542-43 (1986) (question of constructive fraud properly submitted to jury although remedy of rescission was barred by laches). This precedent leads us to disagree with the conclusion of the Dissent that the Morrows' claim of constructive fraud must fail because they do not seek to rescind a contract. Dissent, ¶ 95.

¶63 We have already determined that, based on the facts alleged, Bank of America owed a fiduciary duty to the Morrows. *Supra* ¶ 37. If the facts establishing this duty are

27

not ultimately proven, however, we note that a fiduciary duty is not required to support a claim of constructive fraud. *Mattingly*, 285 Mont. at 218, 947 P.2d at 72; *McGregor*, 220 Mont. at 109, 714 P.2d at 543 ("no fiduciary or confidential relationship need exist between the parties to justify a finding of constructive fraud."). Constructive fraud "'merely requires the establishment of a duty.'" *Mattingly*, 285 Mont. at 218, 947 P.2d at 72 (quoting *McJunkin v. Kaufman & Broad Home Sys.*, 229 Mont. 432, 439, 748 P.2d 910, 915 (1987)).

¶64  Even without a fiduciary duty, a duty of disclosure may arise in the following circumstances: "'one who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party . . . .'" *Deist*, 208 Mont. at 216, 678 P.2d at 193 (quoting *Tokarz*, 656 P.2d at 1092). A duty sufficient to support a finding of constructive fraud "may exist where one party has acted to mislead the other in some way." *Mattingly*, 285 Mont. at 219, 947 P.2d at 72. In *Lueras*, the California Court of Appeal held "that a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification . . . ." 163 Cal. Rptr. 3d at 821. We agree. Having provided the Morrows with information about the repayment status of their existing loan, Bank of America had a duty to ensure the information was not misleading. *See Deist*, 208 Mont. at 216, 678 P.2d at 193 (quoting *Tokarz*, 656 P.2d at 1092). Because Bank of America had access to its servicing records that the Morrows did not, it also had a duty to disclose material

28

information about its servicing of the Morrows' loan. *See Deist*, 208 Mont. at 216, 678 P.2d at 193 (quoting *Tokarz*, 656 P.2d at 1092).

¶65 As noted in our discussion of negligent misrepresentation, the Morrows have alleged Bank of America made several misleading statements regarding the status of their loan and their application for modification. *Supra* ¶ 47. The Morrows allege Bank of America gained an advantage as a result of these statements, because the Morrows made payments to the Bank for an additional fourteen months rather than immediately seeking another lender or proceeding with a short sale or foreclosure. The Morrows allege these statements also resulted in prejudice to them, because they defaulted on their loan and allowed the default to grow for months in reliance on the Bank's representations. Again, Bank of America denies that its representatives made the allegedly misleading statements. Genuine issues of material fact exist regarding the Morrows' claim of constructive fraud. The District Court erred in granting summary judgment to Bank of America on this claim, and we reverse.

¶66 *Issue Seven: Whether the District Court erred in granting summary judgment to Bank of America on the Morrows' claim under the Montana Consumer Protection Act.*

¶67 The Montana Unfair Practices and MCPA of 1973 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 30-14-103, MCA. The MCPA applies to banks engaged in consumer lending and the collection and servicing of loans. *Baird v. Norwest Bank*, 255 Mont. 317, 328, 843 P.2d 327, 334 (1992). A practice is unfair if it "offends established public policy and . . . is either immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers." *Rohrer*, ¶ 31. Specifically, it is an unfair or deceptive practice when a party "states that a transaction involves rights, remedies or obligations that it does not involve." Admin. R. M. 23.19.101(1)(l). A consumer may sue under the act if he or she has suffered "any ascertainable loss of money or property" as the result of an unfair practice. Section 30-14-133, MCA.

¶68 The Morrows claim Bank of America instructed them to default on a loan and make partial payments on that loan, while keeping them in a servicing status that required them to make full payments on that loan. The Morrows claim they were not accurately informed of their servicing status, because Bank of America told them both that they remained in regular servicing and that they were in a modification program. These conflicting representations sometimes occurred within a day or two of one another, only for the cycle to be repeated again the following month. The Morrows were not granted a decision on their modification until October 2010, ten months after they had allegedly been told to make reduced payments. They were not informed of the reason for that decision until five months later, in March 2011. The Morrows' default grew for more than a year, while Bank of America repeatedly told them to ignore it, and while the Morrows made trial payments for fourteen months.

¶69 The allegations stated by the Morrows, if true, would constitute a practice substantially injurious to consumers. *See e.g. Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574-75 (7th Cir. 2012) (ineffectual implementation of HAMP sufficient to state claim under Illinois Consumer Fraud and Deceptive Businesses Practice Act); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 353-54 (D. Mass. 2011) (deceptive

30

representations about eligibility for HAMP sufficient to state claim under Massachusetts Consumer Protection Act). Notably, the Morrows offered an expert report from the former Montana Commissioner of Financial Institutions, who concluded that the pattern and practice of the Bank was unfair, irresponsible, and substandard practice. Bank of America offered no competing expert testimony. The Bank denies it instructed the Morrows to miss a payment or to ignore notices of default, demonstrating the existence of genuine issues of material fact.

¶70 Bank of America also argues that the Morrows have failed to show "any ascertainable loss of money or property" as required to state a claim under the MCPA. Section 30-14-133, MCA. As we have already noted, the question of the Morrows' damages should be resolved by a finder of fact. *Supra* ¶ 48. Therefore, we reverse the order of the District Court granting summary judgment to Bank of America on the Morrows' claim for violations of the MCPA.

## CONCLUSION

¶71 We affirm the District Court's grant of summary judgment to Bank of America regarding breach of contract and tortious breach of the implied covenant of good faith and fair dealing. We reverse summary judgment on the Morrows' claims of negligence, negligent misrepresentation, actual fraud, constructive fraud, and violations of the MCPA, and remand for further proceedings consistent with this Opinion.


/S/ MIKE McGRATH

31

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ GREGORY G. PINSKI
District Court Judge
sitting for former Justice Brian Morris


Justice Laurie McKinnon, concurring in part and dissenting in part.

¶72    At its inception, and throughout the proceedings in the District Court, this lawsuit has been about two things: (1) enforcing a modified loan, and (2) obtaining damages for alleged torts arising from the loan modification.  What the Morrows primarily want is a court decree that their original mortgage has been modified, pursuant to discussions with Bank of America employees over the telephone, to have an extended term and a lower interest rate.  This is not possible, of course, because such agreements must be in writing.  Indeed, the Morrows' attempt to enforce oral communications concerning a mortgage is contrary to fundamental and longstanding principles of contract law, which mandate that agreements relating to real property be in writing.  *Ducie v. Ford*, 8 Mont. 233, 237, 19 P. 414, 415 (1888); *Hinebauch v. McRae*, 2011 MT 270, ¶ 23, 362 Mont. 358, 264 P.3d 1098.  It is also contrary to the recording system, which is founded on the principle that interests in real property must be written and duly recorded.  Sections 70-21-301, -302, MCA; *Earl v. Pavex, Corp.*, 2013 MT 343, ¶¶ 17-18, 372 Mont. 476, 313 P.3d 154.

¶73    Hence, the Morrows are left with only the possibility of recovering tort damages arising out of the manner in which Bank of America handled their request for a loan

32

modification. I agree with the Court that the Morrows have alleged facts which, if proved, would establish that Bank of America owed them a fiduciary duty in managing the loan-modification process. I also agree that the Morrows may pursue a claim of negligent misrepresentation as defined in *Restatement (Second) of Torts* § 552 (1977). Finally, I agree that the Morrows' allegations regarding Bank of America's conduct, if true, would constitute a practice that violates the Montana Consumer Protection Act.

¶74    Beyond this, however, I do not agree with the Court's analysis of the Morrows' fraud claims. While I conclude, as does the Court, that the Morrows may proceed with a claim of actual fraud, I believe our Opinion blurs the distinction between actual fraud and negligent misrepresentation. In my view, it is important in this case that we clarify that distinction. Furthermore, I do not agree with the Court that the Morrows have stated a claim of constructive fraud. Thus, for these reasons, I concur in the Court's resolution of Issues One, Two, Three, Four, Five, and Seven, but write separately to discuss certain facets of Issues Two, Four, and Five. I dissent as to Issue Six.

### Issue Two – Negligence

¶75    I agree with the Court's analysis and conclusion under Issue Two that the District Court erred in granting Bank of America summary judgment on the Morrows' negligence claim. Since there are genuine issues of material fact regarding this claim, Opinion, ¶ 42, I believe it is important to discuss how our decision in *Gliko v. Permann*, 2006 MT 30, 331 Mont. 112, 130 P.3d 155, applies in the present context.

¶76    The relationship between a bank and its customer is generally described as that of debtor and creditor. *Deist v. Wachholz*, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984).

33

As such, a financial institution generally owes no fiduciary duty to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *Deist*, 208 Mont. at 216, 678 P.2d at 193; *Lachenmaier v. First Bank Sys., Inc.*, 246 Mont. 26, 33, 803 P.2d 614, 618 (1990). A limited exception to this general rule has been recognized where there is proof of "special circumstances"—as, for example, where a bank is thrust beyond the role of a simple creditor into the role of an advisor, thereby creating a relationship of trust and confidence. *Lachenmaier*, 246 Mont. at 33, 803 P.2d at 618; *Deist*, 208 Mont. at 216-17, 678 P.2d at 193. To establish a fiduciary relationship, the bank must "act as a financial advisor in some capacity, other than that common in the usual arms-length debtor/creditor relationship." *Coles Dept. Store v. First Bank (N.A.)—Billings*, 240 Mont. 226, 229, 783 P.2d 932, 934 (1989) (internal quotation marks omitted); *accord First Sec. Bank v. Abel*, 2008 MT 161, ¶ 34, 343 Mont. 313, 184 P.3d 318.

¶77   In *Gliko*, the parties disputed whether the existence of a "special relationship" giving rise to a fiduciary duty between a bank and its customer is a question of fact or a question of law. We noted that there were precedents supporting both approaches. *Gliko*, ¶¶ 16-23. After discussing these precedents, we held that

> whether a fiduciary duty exists between two parties is a question of law, not fact, and it may be resolved on summary judgment when no genuine issues of material fact remain. Likewise, whether a "special relationship" exists between two parties such as would give rise to a fiduciary duty is a question of law, not fact, for the relationship and the duty are two sides of the same coin. To determine the existence or absence of a special relationship in cases where it normally does not exist—such as between a bank and a customer—a court may be required to make a fact-intensive inquiry. The circumstances of the particular relationship are factual, and disputes over

34

> material facts will preclude summary judgment. However, the *conclusion* drawn by a court from undisputed facts is one of law, not of fact.

*Gliko*, ¶ 24 (emphasis in original).

¶78 As clarified in *Gliko*, therefore, the existence of a special relationship is a question of law that is determined by the court based on the facts of the case. Where the material facts are undisputed, the existence of a special relationship may be resolved on summary judgment. *Gliko*, ¶ 16 (citing cases standing for the proposition that, "in the absence of a genuine issue of material fact, the question of the existence of a fiduciary relationship could properly be resolved on summary judgment"). But, where there are genuine issues of material fact relating to the existence of a special relationship, it becomes necessary for a fact-finder to resolve the factual dispute one way or the other. If the fact-finder resolves the factual dispute in favor of the customer, by finding the facts necessary to establish a special relationship, then a fiduciary duty exists as a matter of law and the issue then becomes whether the bank breached that duty and thereby caused the customer damages. Conversely, if the fact-finder resolves the factual dispute in favor of the bank, by finding facts that do not support a special relationship, then a fiduciary duty does not exist and the customer's negligence claim fails.

¶79 Importantly, then, in situations where the material facts are disputed, the existence of a special relationship is still a question of law. *Gliko*, ¶ 24. If the court determines that the facts alleged by the customer would not support a special relationship, even if those facts were resolved by the fact-finder in the customer's favor, then the customer's negligence claim necessarily fails and summary judgment for the bank is proper. On the

other hand, if the trial court determines that the facts alleged by the customer would support a special relationship if they were resolved by the fact-finder in the customer's favor, then summary judgment is not proper. This latter scenario is what we have determined exists here. Opinion, ¶ 37 ("The Morrows have alleged facts which, if proven, would establish that Bank of America owed them a fiduciary duty.").

¶80 Properly instructing the jury is critical to this scheme. On remand, the District Court will need to identify the specific facts which, if proved by the Morrows, would establish that Bank of America had a "special relationship" with them. The relevant facts alleged by the Morrows are discussed at ¶¶ 37 and 41 of our Opinion. The District Court also may draw from a long line of authority identifying what facts are essential to the creation of a fiduciary duty between a bank and its customer. *See e.g. Deist*, 208 Mont. at 216-18, 678 P.2d at 193-94; *Pulse v. N. Am. Land Title Co. of Mont.*, 218 Mont. 275, 283-84, 707 P.2d 1105, 1110 (1985); *Simmons v. Jenkins*, 230 Mont. 429, 433-34, 750 P.2d 1067, 1070 (1988); *Shiplet v. First Sec. Bank of Livingston, Inc.*, 234 Mont. 166, 176, 762 P.2d 242, 248 (1988); *Simmons Oil Corp. v. Holly Corp.*, 258 Mont. 79, 85-86, 852 P.2d 523, 526-27 (1993). The District Court will then need to instruct the jurors that if they find these facts were proved by a preponderance of the evidence, then Bank of America owed the Morrows a fiduciary duty and the jurors must proceed to the questions of breach, causation, and damages. The jurors will need to be further instructed that if they find these facts were *not* proved, then Bank of America owed the Morrows no duty and there is nothing further to determine regarding the Morrows' negligence claim.

¶81    I believe that instructing the jurors in this manner is necessary to maintain our clarifications in *Gliko*. The facts, where there is a genuine dispute, are determined by a fact-finder.[1] But whether the facts, if resolved by the fact-finder in the plaintiff's favor, would be sufficient to establish a "special relationship" creating a fiduciary duty is determined as a matter of law by the court. With these observations, I concur in the Court's resolution of Issue Two.

## Issue Four – Statute of Frauds

¶82    The District Court agreed with Bank of America's argument that the Morrows cannot use fraud claims to enforce an alleged oral contract. In this respect, I believe the District Court's decision is correct. As we explain, "a claim of fraud may not serve as an alternative means of enforcing an oral agreement within the Statute of Frauds, because 'the breach of a promise which the law does not regard as binding is not a fraud.'" Opinion, ¶ 54 (quoting *Austin v. Cash*, 274 Mont. 54, 62, 906 P.2d 669, 674 (1995)). To hold Bank of America liable in fraud for failing to honor an unenforceable contract would effectively nullify the Statute of Frauds.

¶83    In litigation of this nature, however, the parties and the court must recognize the subtle distinctions between (1) a contract action where a party is trying to enforce or rescind a contract and (2) a tort action where a party is alleging fraud surrounding an alleged contract. For example, an action is permissible for fraudulent representations that preceded a contract and allegedly induced the aggrieved party into signing the contract.

---

[1] We noted in *Gliko*, ¶ 25, that although the existence of genuine issues of material fact is not always easily ascertained, neither conclusory assertions nor mere disagreement about the interpretation of a fact constitutes a genuine issue of material fact.

Such an action is in tort, independent of any contract action. *State ex rel. Dimler v. Eleventh Jud. Dist. Ct.*, 170 Mont. 77, 81-82, 550 P.2d 917, 919-20 (1976); *see also Falls Sand & Gravel Co. v. W. Concrete, Inc.*, 270 F. Supp. 495, 500 (D. Mont. 1967) ("'[O]ne who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud.'" (quoting *Bankers Trust Co. v. Pac. Employers Ins. Co.*, 282 F.2d 106, 110 (9th Cir. 1960))). We have also stated that the Statute of Frauds does not apply to liability based on fraud or negligent misrepresentation. *Phil-Co Feeds, Inc. v. First Natl. Bank in Havre*, 238 Mont. 414, 421, 777 P.2d 1306, 1311 (1989).

¶84     I thus agree with the Court that an action in tort may be maintained independently of an action in contract, given appropriate facts. Opinion, ¶ 54. Nevertheless, as Justice Cotter noted in her dissent in *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, 347 Mont. 267, 198 P.3d 796, "the dividing line between breaches of contract and torts often lies in a twilight zone, where it is difficult to determine whether the case applies strictly to the one or to the other." *Town of Geraldine*, ¶ 37 (Cotter & Leaphart, JJ., dissenting) (internal quotation marks omitted). I believe the dividing line in the present case—between the contract claim to enforce an oral modification to a mortgage, and the tort claims seeking damages based on the parties' underlying communications—lies in that "twilight zone." Nevertheless, the Morrows have alleged that Bank of America made material representations which turned out to be false, and that they were injured due to their justified reliance on these representations. These allegations are independent of the Morrows' contract claim and sound in tort. I thus concur in the Court's conclusion

38

that the District Court erred in granting summary judgment to Bank of America on the Morrows' non-contract claims, based on the Statute of Frauds. Opinion, ¶ 55.

<b>Issue Five – Actual Fraud</b>

¶85 According to the Court's Opinion, the Morrows may establish claims of negligent misrepresentation and actual fraud if they prove the following:

> *negligent misrepresentation*: Bank of America, in the course of its business, supplied false information for the guidance of the Morrows in their business transaction; Bank of America failed to exercise reasonable care or competence in obtaining or communicating this information; the Morrows justifiably relied upon the information; and the Morrows suffered pecuniary loss as a result. Opinion, ¶¶ 45-46 (citing *Restatement (Second) of Torts* § 552).

> *actual fraud*: Bank of America made a false representation to the Morrows; the representation was material to their requested loan modification; Bank of America knew the representation was false or was ignorant of its truth; Bank of America intended the Morrows to act upon the representation in the manner reasonably contemplated; and the Morrows were ignorant of the representation's falsity, justifiably relied upon its truth, and suffered damages as a result. Opinion, ¶ 57.

¶86 As articulated, these two causes of action appear essentially the same. Both are satisfied if the Bank supplied false information for the Morrows' use or guidance, the Bank was ignorant (perhaps due to a lack of reasonable care) about the information's truth, and the Morrows justifiably relied on the information to their detriment. Indeed, the Court states that "[t]he Morrows' claim of fraud rests on the same factual allegations as [their] claim of negligent misrepresentation." Opinion, ¶ 58. In particular, the Bank allegedly made several false statements regarding the servicing of the Morrows' existing loan and the status of their application for a loan modification; the statements were made in the course of the Bank's business and for the Morrows' guidance; the Bank failed to exercise reasonable care in obtaining the information and was ignorant of the statements'

39

truth or falsity; and the Morrows did not know of the statements' falsity and suffered damages due to their justifiable reliance on the statements. Opinion, ¶¶ 47-51, 58-60.

¶87 I believe we have lost sight of the distinction between actual fraud and negligent misrepresentation. Initially, it is important to note that actual fraud may be based on common law or statute. The statutory provision states:

> Actual fraud, within the meaning of this part, consists in any of the following acts committed by a party to the contract or with the party's connivance *with intent to deceive another party to the contract or to induce the other party to enter into the contract*: (1) the suggestion as a fact of that which is not true by one who does not believe it to be true; (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though the person believes it to be true; (3) the suppression of that which is true by one having knowledge or belief of the fact; (4) a promise made without any intention of performing it; or (5) any other act fitted to deceive.

Section 28-2-405, MCA (emphasis added, paragraph breaks omitted). As reflected in the italicized language, actual fraud involves an "intent to deceive . . . or to induce" another party. A showing of actual fraud under this statute means that consent to a contract was not given freely and the party is entitled to rescind the contract. *See* §§ 28-2-102(2), -301(1), -302, -401(1)(c), -404, -405, -1711(1), MCA. Here, however, the Morrows do not seek to rescind a contract. If anything, they seek to enforce one. Hence, the Morrows are not asserting statutory actual fraud. Rather, they assert common law actual fraud.

¶88 The common law definition of actual fraud consists of the nine elements set forth at ¶ 57 of today's Opinion and in numerous prior cases, such as *Franks v. Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487, and *Town of Geraldine*, ¶ 28. These elements can be traced back through our caselaw to *Lee v. Stockmen's Natl. Bank of*

40

*Hardin*, 63 Mont. 262, 207 P. 623 (1922), where we adopted the definition of actual fraud set forth in Corpus Juris:

> In order to go to the jury the plaintiff must make out a *prima facie* case embracing the elements of actual fraud, *viz.*: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. (26 C.J. 1062.)

63 Mont. at 284, 207 P. at 630 (citing 26 C.J. *Fraud* § 6 (1921)). This rule presently may be found at 37 C.J.S. *Fraud* § 12 (2008). A showing of actual fraud as a common law tort entitles the person to damages. *See e.g. Cartwright v. Eq. Life Assurance Socy. of the U.S.*, 276 Mont. 1, 22-26, 914 P.2d 976, 990-91 (1996).

¶89    The Court opines that an "intent to deceive or injure" is not required to establish actual fraud. Opinion, ¶ 59 (citing *W. Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 61, 359 Mont. 34, 249 P.3d 35). This is incorrect. As stated in the same authority from which we adopted the nine-element definition of actual fraud, "a fraudulent intent, or an intent to deceive, is an essential element of fraud." 26 C.J. *Fraud* § 44 (footnotes omitted); *accord* 37 C.J.S. *Fraud* § 4 ("Actual fraud is intentional fraud, with an intent to deceive being an essential element thereof."). Moreover, we have recognized in several cases that common law actual fraud includes an "intent to deceive or dishonesty of purpose." *State ex rel. State Compen. Mut. Ins. Fund v. Berg*, 279 Mont. 161, 175-76, 927 P.2d 975, 983 (1996); *accord Town of Geraldine*, ¶ 28; *Barrett v. Holland & Hart*, 256 Mont. 101, 107, 845 P.2d 714, 717 (1992) ("intent to misrepresent"); *see also e.g. Durbin v. Ross*, 276 Mont. 463, 470-71, 916 P.2d 758, 763 (1996) (posing a hypothetical

41

example of actual fraud in which real estate brokers "lied in order to sell a property").[2]

Intent to deceive "means that the party charged [with actual fraud] was inspired by a deliberate, fraudulent purpose to injure and deceive the party complaining. Actual fraud implies deceit, artifice, and design, and imports the active operation of the mind." 37 C.J.S. *Fraud* § 4 (footnote omitted). This mental state, "consisting in an intent to deceive, manipulate, or defraud," is known as scienter. *Black's Law Dictionary* 1463 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009). The scienter requirement is a critical distinction between actual fraud and negligent misrepresentation. *Restatement (Second) of Torts* § 552 cmt. a (actual fraud involves "intent to deceive," whereas negligent misrepresentation involves "good faith coupled with negligence"); *Falls Sand & Gravel*, 270 F. Supp. at 501 ("an action for negligent misrepresentation is quite different from an action for intentional fraudulent and deceitful misrepresentation, since there is no requirement of scienter"); *Barrett*, 256 Mont. at 107, 845 P.2d at 717 ("Negligent misrepresentation has a lesser standard of proof than [actual] fraud. Rather than requiring an intent to misrepresent, it requires a showing of a failure to use reasonable care or competence in obtaining or communicating the information.").

---

[2] *Western Security Bank*, upon which the Court relies for the contrary proposition (*see* Opinion, ¶ 59), is not persuasive. There, the Court first faulted the district court for "cit[ing] no authority" for the "intent to injure" standard, and then merely cited to the nine-element definition of actual fraud as authority that "intent to injure" is not required. *W. Sec. Bank*, ¶¶ 60-62 (citing *Durbin*, 276 Mont. at 469, 916 P.2d at 762, and *May v. ERA Landmark Real Estate of Bozeman*, 2000 MT 299, ¶ 21, 302 Mont. 326, 15 P.3d 1179). Neither *Western Security Bank* nor *May*, however, contains any in-depth analysis of the nine-element definition. Neither opinion addressed our statements in *Berg*, *Town of Geraldine*, and *Barrett*, or the principles stated in Corpus Juris and the Restatement. Moreover, as just noted, our *Durbin* opinion includes a discussion that is actually consistent with recognition of an "intent to deceive or injure" standard.

¶90 "Because an intent to defraud is generally not susceptible to direct proof, it invariably must be proven by circumstantial evidence." 37 C.J.S. *Fraud* § 42. Such intent may be established "by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." 37 C.J.S. *Fraud* § 42. An intent to deceive "cannot be inferred merely from the falsity of a statement," 26 C.J. *Fraud* § 44, or from "mere carelessness" by the speaker, 37 C.J.S. *Fraud* § 42. But it may be inferred where the speaker makes a statement "with knowledge of its falsity," "in reckless ignorance," or "in positive terms importing a knowledge of which the speaker is consciously ignorant," and the speaker intends the statement to "be acted upon by a party reasonably within the contemplation of the speaker." 26 C.J. *Fraud* § 44. In other words, intending that a statement be acted upon, while consciously ignorant of whether the statement is true, suggests a fraudulent intent on the part of the speaker.

¶91 The Court posits that knowledge of the statement's falsity is not required and that "[t]he requisite knowledge may also be established where the defendant is ignorant of whether the statement is true." Opinion, ¶ 59. I agree that actual knowledge is not required, but I do not agree that simple ignorance, by itself, is sufficient. Again, the authority from which we adopted the nine-element definition of actual fraud explains that "ignorance of [the representation's] truth" means that the speaker "doubts the truth of his representations," speaks "with conscious ignorance or reckless indifference as to their truth or falsity," or makes "unqualified" assertions that "import[ ] a knowledge of which the speaker is consciously ignorant." 26 C.J. *Fraud* §§ 37, 39, 40, 44 (footnotes omitted).

43

Similarly, the Restatement sets forth three conditions under which a misrepresentation is fraudulent: "A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." *Restatement (Second) of Torts* § 526. "The fact that the misrepresentation is one that a [person] of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability" for fraudulent misrepresentation (actual fraud). *Restatement (Second) of Torts* § 526 cmt. d. "Fraudulent" means that the speaker had "knowledge of the untrue character of his representation." *Restatement (Second) of Torts* § 526 cmt. a. This does not mean the speaker must have had *actual* knowledge of the falsity. It is sufficient if the speaker was conscious of a likelihood that the facts may not be as he represented them:

> In order that a misrepresentation may be fraudulent it is not necessary that the maker know the matter is not as represented. Indeed, it is not necessary that he should even believe this to be so. It is enough that *being conscious that he has neither knowledge nor belief in the existence of the matter* he chooses to assert it as a fact. Indeed, since knowledge implies a firm conviction, a misrepresentation of a fact so made as to assert that the maker knows it, is fraudulent if he is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.

*Restatement (Second) of Torts* § 526 cmt. e (emphasis added).

¶92    Thus, both the Restatement and Corpus Juris recognize that, at a minimum, a "conscious" ignorance by the speaker about whether his or her statements are true is necessary to establish actual fraud. Without evidence that the defendant at least "recognize[d] that there is a chance, more or less great, that the fact may not be as it is

44

represented," *Restatement (Second) of Torts* § 526 cmt. e, it is impossible to infer that the defendant intended to deceive the plaintiff. As discussed, an intent to deceive, manipulate, or defraud is an essential element of actual fraud and is the critical distinction between actual fraud and negligent misrepresentation—the latter involving "good faith coupled with negligence." *Restatement (Second) of Torts* § 552 cmt. a. Accordingly, in my view, the Court errs in suggesting that merely being unaware or oblivious about a representation's truth or falsity is sufficient. Opinion, ¶ 59.

¶93 Here, the Morrows did not expressly allege in their First Amended Complaint that Bank of America had an intent to deceive, manipulate, or defraud them. And, frankly, I question what Bank of America would have hoped to gain from such an effort. It seems to me that what the Morrows' allegations genuinely reflect is a classic claim of negligent misrepresentation resulting from Bank of America's left hand not knowing what its right hand was doing. This view finds support in the Court's footnote referring to the Consent Order, which "notes that Bank of America failed to devote appropriate resources, oversight, and training to its foreclosure processes." Opinion, ¶ 39 n. 2.

¶94 Nevertheless, the Morrows did allege in their First Amended Complaint that Bank of America "knew" its representations to the Morrows "were false." The Morrows have presented evidence of a multitude of conflicting communications from the Bank. A jury could infer from the Morrows' evidence that Bank employees were at least consciously aware that the facts they communicated to the Morrows likely were not as represented. *Restatement (Second) of Torts* § 526 cmt. e. I thus concur in the Court's conclusion that the District Court erred in granting summary judgment to Bank of America on the

45

Morrows' actual fraud claim. I do so, however, with recognition that actual fraud does not contemplate merely making statements about which the speaker is ignorant; it instead contemplates that the speaker had some degree of "knowledge of the untrue character of his representation," *Restatement (Second) of Torts* § 526 cmt. a, and "was inspired by a deliberate, fraudulent purpose to injure and deceive" the plaintiff, 37 C.J.S. *Fraud* § 4.[3]

## Issue Six – Constructive Fraud

¶95    As a final matter, I disagree with the Court's analysis of constructive fraud. Our cases discussing constructive fraud have tied such claims to § 28-2-406, MCA, as the Court does again today. *See* Opinion, ¶ 62; *Harris v. St. Vincent Healthcare*, 2013 MT 207, ¶ 30, 371 Mont. 133, 305 P.3d 852; *In re Adoption of S.R.T.*, 2011 MT 219, ¶ 17, 362 Mont. 39, 260 P.3d 177; *Lee v. Armstrong*, 244 Mont. 289, 294, 798 P.2d 84, 87-88 (1990); *McJunkin v. Kaufman & Broad Home Sys., Inc.*, 229 Mont. 432, 439, 748 P.2d 910, 914-15 (1987). This statute and the other provisions of Title 28, chapter 2, MCA, pertain to contract formation, enforcement, modification, and extinction. Actual fraud under § 28-2-405, MCA, and constructive fraud under § 28-2-406, MCA, are referred to in the Code as "[t]he *contract* definitions of fraud," not the *tort* definitions of fraud. Section 27-1-221(4), MCA (emphasis added). Constructive fraud under § 28-2-406, MCA, is a ground for rescinding a contract. *See e.g. Gliko*, ¶¶ 31, 36. Here, however,

---

[3] Although a plaintiff may allege both actual fraud (intent to deceive) and negligent misrepresentation (failure to exercise reasonable care) as to the same course of conduct, the plaintiff "cannot recover under [both] theories" because "a defendant cannot be found to have committed an act both intentionally and negligently." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1269 (Ohio App. 9th Dist. 1996). Thus, if the Morrows prevail on their actual fraud claim, their negligent misrepresentation claim becomes moot, and vice versa.

the Morrows do not seek to rescind a contract. If anything, they seek to enforce one. Hence, the Morrows are not asserting constructive fraud under § 28-2-406, MCA. As a matter of fact, they do not cite or make any argument under this statute in their briefs, and the statute thus does not apply. In my view, the Court errs by nevertheless applying § 28-2-406, MCA—a ground for rescinding a contract—when we have determined that the alleged contract (a modified loan agreement) does not exist in the first place. Our reasoning is unsound and will cause confusion in subsequent applications of the statute.

¶96 Perceiving that I have concluded that the Morrows' constructive fraud claim must fail "because they do not seek to rescind a contract," the Court cites several cases for the proposition that a plaintiff may seek damages for constructive fraud apart from any action to rescind a contract. Opinion, ¶ 62 (citing *Mattingly v. First Bank of Lincoln*, 285 Mont. 209, 947 P.2d 66 (1997), *Lee*, 244 Mont. 289, 798 P.2d 84, and *McGregor v. Mommer*, 220 Mont. 98, 714 P.2d 536 (1986)). It appears the Court has misapprehended my point. I agree that a plaintiff may seek damages for the *tort* of constructive fraud (assuming such a tort has been recognized), independent of any contract action. But I disagree that the *tort* of constructive fraud is defined by a statute (§ 28-2-406, MCA) that undeniably sets forth a "*contract* definition[ ] of fraud." Section 27-1-221(4), MCA (emphasis added). The provisions of Title 28 were not intended to create causes of action sounding in tort. Construing statutory language identical to § 28-2-406, MCA, the South Dakota Supreme Court determined that constructive fraud under this statute will support an action to avoid a contract, but not a tort action for damages. *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 116-17 (S.D. 1977); *Harding Co. v. Frithiof*, 575 F.3d 767, 774

(8th Cir. 2009) (citing *Schmidt*).  Here, the Morrows do not seek to avoid or rescind a contract pursuant to § 28-2-406, MCA.  Their constructive fraud claim is intended as a *tort* claim, not a *contract* claim, and we err by perpetuating the erroneous use of a contract statute for the purpose of defining the elements of a tort.

¶97    Unlike actual fraud—which is defined for contract purposes in § 28-2-405, MCA, and for tort purposes in our nine-element definition discussed above—this Court has never articulated a common law definition of constructive fraud.  I question whether it is necessary to do so, given our determination in *Bottrell v. American Bank*, 237 Mont. 1, 20-21, 773 P.2d 694, 706 (1989), that constructive fraud and negligent misrepresentation are coextensive when based on the same misrepresentation and the breach of a legal duty.[4]  But assuming, for the sake of discussion, that we should adopt a common law cause of action for constructive fraud, whatever else such a claim might entail it would include the requirement (also contained in § 28-2-406, MCA) that the defendant gained an advantage from the alleged fraud.  We have explained that "[c]ourts may invoke constructive fraud as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the false statement is not knowingly made."  *Durbin*, 276 Mont. at 470, 916 P.2d at 762.  It is said that "[c]onstructive fraud is a fraud

_____

[4] "Legal duty" in this context refers to a fiduciary relationship or a duty that arises from "special circumstances."  *Bottrell*, 237 Mont. at 20-21, 773 P.2d at 706.  In effect, we held in *Bottrell* that constructive fraud is subsumed within negligent misrepresentation.  We explained that the fields of liability for constructive fraud and for negligent misrepresentation are concentric circles with a common center and differing radii, where the liability in each theory is based on misrepresented facts.  The radius of the negligent misrepresentation circle is greater than the radius of the constructive fraud circle because negligent misrepresentation may occur both where there is a breach of a legal duty (like constructive fraud) and where there is merely a failure to exercise reasonable care (unlike constructive fraud).  *Bottrell*, 237 Mont. at 21, 773 P.2d at 706.

that arises by the operation of law from conduct, which if sanctioned by law, would secure an unconscionable advantage [to the defendant], irrespective of the actual intent to defraud." 37 C.J.S. *Fraud* § 5 (footnote omitted); *accord* 37 Am. Jur. 2d *Fraud and Deceit* § 33 (2013) ("[T]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself or herself.").

¶98    Here, I disagree with the Court's assertion that the Morrows have alleged Bank of America gained an advantage from making misleading statements regarding the status of their loan and their application for modification. Opinion, ¶ 65. I see no such allegation in the constructive fraud allegations of their First Amended Complaint, in their summary judgment briefing, or in their briefs on appeal. Moreover, aside from failing to allege that Bank of America gained an advantage from the allegedly misleading statements, the Morrows also fail to identify what that supposed advantage was. The Court opines that the Bank gained an advantage because the Morrows made payments to the Bank for an additional 14 months rather than immediately seek another lender or proceed with a short sale or foreclosure. Opinion, ¶ 65. Again, the Morrows made no such allegations. Furthermore, the Morrows had a preexisting contractual obligation to the Bank to make monthly mortgage payments of $2,301.28. The monthly payments the Morrows made during the 14-month period ($1,239.99) were approximately half of what the Bank was entitled to receive under the original mortgage. As the Court concedes, the Bank had no obligation in the first place to avoid foreclosure or to grant a modification of the loan. Opinion, ¶ 39. Thus, it could be argued that the Bank incurred a *disadvantage* from the

Morrows' reduced payments. In short, there is no evidence, let alone allegations, that the Bank was "unjustly enriched" as a result of conflicting statements about the servicing of the Morrows' existing loan and the status of their application for a modification. *Durbin*, 276 Mont. at 470, 916 P.2d at 762. For this reason, I believe the District Court correctly granted summary judgment to Bank of America on the constructive fraud claim, and I dissent from the Court's contrary holding.

¶99    In conclusion, I dissent as to Issue Six and, except as otherwise stated above, I concur as to all other issues.


/S/ LAURIE McKINNON


Justice Jim Rice joins the Concurrence and Dissent of Justice Laurie McKinnon.


/S/ JIM RICE