JUSTICE RICE,
dissenting.
*235 ¶27 Although I disagree with the Court’s determination to grant multifaceted relief to Don, I believe it is important and would be helpful to the Bar and to litigants in future cases to highlight the Court’s holdings herein. Further, since the Court’s decision is premised largely upon a nonspecific “under the circumstances” rationale, it is essential that the factual and procedural background of this case be set forth completely and accurately so that the circumstances may be properly analyzed and the Court’s holdings applied appropriately in future cases.

Factual and Procedural Background

¶28 After Don was served with the summons and complaint in this matter on March 13,2007, he filed a financial affidavit and request for waiver of fees with the District Court on April 4,2007. In his affidavit, Don averred that he owned a home valued at $200,000, against which was owed $135,000, and that he owned two vehicles, one being a then-late model 2006 GMC pickup that he valued at $43,000. He also owned a 1996 Jeep. Absent from his affidavit was information later developed in this litigation that he was an owner of a business known as Don Hall Builders.[1] The assets associated with this business came to light when Gregory began executing on the default judgment obtained against Don. Those assets included a 5th-wheel travel trailer, generators, compressors, circular saws, band saw, electric and cordless drills and drill sets, chisel sets, drywall drills, sanders, ladders, table saws, reciprocating saw, radial arm saw, planer, lathe, scaffolding and platform, framing nailers, concrete nailers, finish nailers, electric grinders, bench grinder, house heaters, shop heater and vacuum, super routers, drill presses, ratchet and socket sets, bushing sets, chainsaw, chain hoist, elevation scale, multi-meter, tap and die sets, tables, buffer/polisher, tile cutter, paint sprayer, paint mixer, pressure washer, lift jacks, propane weed burner, as well as grease guns, tool boxes, stand-up tool box, tool accessory kit, staplers, tool sets, and other power tools. Also executed upon, but omitted from his financial affidavit, was Don’s assets related to fishing: 19’ Gull boat with inboard/outboard motor, trolling motor and fuel tank, 12’ Harbor Craft boat, five horse boat motor and tank, marine radio, electric downrigger, fish finder, raft, boat wench, Minn-kota trolling motor, tackle boxes, tackle, reels and rods, and boxes of miscellaneous equipment. Don listed his income as “SSI,” but the record does not indicate how he *236 qualified for Supplemental Security Income while also owning the indicated assets. The Court holds that Don was “without the resources necessary to navigate the judicial system.” Opinion, ¶ 24.
¶29 The Court states, as it does in several ways in the opinion, that Don “acted without the assistance of counsel and did not fully understand his role in the case.” Opinion, ¶ 19. Don was represented by counsel after this proceeding progressed to the point that Gregory began executing on the judgment entered against Don. Don was also represented by counsel when he filed for bankruptcy, in which he obtained a discharge of the judgment that the Court here has ordered to be set aside.
¶30 After being served with process, Don was granted a waiver of filing fees, but he did not file an answer. Instead, he wrote a letter to Judge Prezeau. In addition to the Court’s quotes from the letter, Don described Gregory’s claims as “fraudulent” and told Judge Prezeau that “I can not afford an Attorney and will not.” Don also sent a letter to Gregory’s counsel, in which he stated:
As for a attorney or respectful lawyer and or person of this State, and County you are a disgrace.
I really think you were taught wrong, you should go back to school and get a education that will help you and others, and not try to bullshit or falsely accuse others.
If there was any thing hid by any one in this house sale it was by the seller only, and maybe you.
I feel I will not or can not answer these bold face lies in any other form.
¶31 The Complaint and Amended Complaint alleged that Don had “inspected the property prior to closing and advised Plaintiff of certain findings, but did not disclose the material defects and adverse conditions” in the property. Don, “in the course of his business, profession, and employment and in connection with the aforesaid transaction in which he had a pecuniary interest, supplied false information to Plaintifffor Plaintiffs guidance in the transaction.” The tort alleged against Don was premised on the Restatement (Second) of Torts § 552, providing that one who, in the course of his business or profession, supplies false information for the guidance of others in their business transactions, is liable for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in communicating the information. See *237 Morrow v. Abraham, 2014 MT 117, ¶¶ 45-46, 375 Mont. 38, 324 P.3d 1167 (explaining this Restatement section provides the definition for the tort of negligent misrepresentation). Gregory contracted with Don to conduct a property inspection and advise him directly about any defects in the house, and thus made a separate claim against Don under a different theory of liability than the other Defendants, who were the seller and the real estate agents in the transaction. The Court quotes from Don’s letter to Judge Prezeau that “the house was older, and therefore likely to have some flaws,” Opinion, ¶ 3, but Don’s written report submitted to Gregory prior to the transaction stated just the opposite, that the property was “very nice” and had “lots of potential.” Don’s report did not say the property was “old” and had “flaws,” but noted only two negatives — that the window trim needed to be repainted and that the metal roofing had one hole — and none of the significant defects claimed to be material by Gregory.[2],[3]
¶32 In November 2007, as the Court notes, the District Court issued an order holding that Don’s letters to Judge Prezeau and to Gregory’s counsel failed to comply with the Rules of Civil Procedure and ordering that “Pro Se Defendant DON HALL shall serve and file an Answer complying with Rule 8, M.R.Civ.P. within ten (10) days, failing which the Court shall enter judgment on the issue of liability against Pro Se Defendant DON HALL ... .” Don was served with the order, but consistent with the statement in his letters that he “will not” respond further, Don did not file an answer, produce any other document, or otherwise respond to the order.
¶33 Three months later, in Februaiy 2008, Gregory moved for a default to be entered against Don for his failure to file an answer following the District Court’s order. Don was served, but he did not respond to the motion. Thus, his default was entered.
¶34 The litigation proceeded and a pre-trial order was entered in December2008. The parties agreed and the District Court ordered that “[t]he default of Don Hall has been entered. The only issue pertaining in the litigation regarding Don Hall is the amount of damages which *238 should be awarded Greg Hall against Don Hall.”[4]
¶35 In February 2009, the District Court ruled on the Defendants’ motions for summary judgment. Defendant Heinlein, the seller in the transaction, argued that he had no duty to disclose-any defects to Gregory, but, alternatively, “[i]f Heinlein had a duty to disclose any potential defects with the real property, [Gregory] contractually waived that duty by hiring a person to perform a property inspection; and relying upon the property inspection in purchasing the property to the exclusion of Heinlein’s representations.” Indeed, in the Buy-Sell Agreement, Gregory waived the home inspection contingency, writing on the document by hand that “I have had the inspection — I release home inspection.” That inspection Gregory referred to was, of course, performed by Don.
¶36 The District Court entered summary judgment against Gregory and in favor of the other Defendants, reasoning that “ ‘means were at hand’ to discover the ‘truth’ and avoid this transaction altogether. Therefore, armed with this imputed knowledge, Plaintiff Hall cannot claim reliance” or that the defendants caused him damages. The court determined that Gregory could not prevail against the other Defendants because knowledge of the conditions of the house, as noted on the sale documents prepared by the other Defendants, was imputed to Gregory. However, Don’s liability to Gregory under the tort of professional reliance was not addressed, having been rendered moot by entry of Don’s default, leaving no liability issues to be resolved.
¶37 The Court notes that Gregory appealed from the entry of summary judgment against the other Defendants. Don did not appeal from the entry of judgment against him. However, in August of2009, this Court granted a motion to dismiss the appeal filed by the other Defendants, noting that “[t]he District Court has not yet, however, entered a judgment setting the amount of damages to be awarded against defendant Don Hall... .” We dismissed without prejudice to permit further proceedings regarding Don Hall so that a final judgment could be entered.
¶38 After dismissal of the first appeal, Gregory moved for entry of a “final” default judgment against Don. The Court notes that the motion stated that “[c]ontact with [Don] is impractical and would serve no purpose” and thus Gregory did not contact Don to determine his position on the motion. Opinion, ¶ 6. Gregoiy did serve Don with the *239 motion but Don did not respond. As the Court notes, the other Defendants responded. Defendants Cemick and Heinlein argued that “Damages must be reasonable” and that “a closer look” at Gregory’s request for damages “maybe warranted.” However, a default judgment in the full amount of $206,522.80 was entered in April 2010.
¶39 In May 2010, Gregory filed a second notice of appeal from the entry of summary judgment in favor of the other Defendants. Don did not appeal from the entry of default or default judgment against him. In October 2010, while Gregory’s appeal was pending, a writ of execution was issued for seizure of Don’s property. Don followed this action by writing letters to the District Court, in which he stated that “maybe I could have asked some one for advice once in awhile and kept the cost very little.” The District Court deemed Don’s letters to be a motion to set aside the judgment and denied it in January 2011. Don did not appeal from the court’s denial of his request to set aside the judgment. Our decision on Gregory’s appeal was rendered in November 2010.
¶40 Two and one-half years later, following a seizure of Don’s property in June 2013, Don, represented by counsel, moved the District Court for a hearing on exemptions from execution. The motion was denied, and as the Court notes, was timely appealed by Don. Thus, the issue properly before the Court, prior to any of the Court’s rulings herein, is the District Court’s denial of Don’s motion for a hearing on exemptions. Don was granted discharge of the judgment in bankruptcy in August 2014.

The Court’s Holdings

¶41 Out-of-time anneal. The Court construes Don’s briefing as an out-of-time appeal from the District Court’s denial of Don’s motion to set aside the default judgment. Opinion, ¶ 15. The timeframe to be noted for this ruling is that Don’s default was entered in February 2008, the “final” default judgment was entered in April 2010, and Don’s motion to set aside the default judgment was denied in January 2011. After he was served, Don did not respond to Gregory’s motions for either entry of default or default judgment, and he did not appeal from either the entry of judgment or the denial of his motion to set aside. The Court’s ruling permits Don to now litigate on appeal the denial of his set-aside motion from four and one-half years ago, as well as the default stretching back seven and one-half years. The Court’s reasoning is that, under M. R. App. P. 4(6) (2011), we may grant an out-of-time appeal “in the infrequent harsh case and under extraordinary circumstances amounting to a gross miscarriage of justice.”
*240 ¶42 The application of M. R. App. P. 4(6)[5] to the circumstances here will serve as helpful precedent for litigants seeking to challenge judgments entered, or to set aside motions denied, after failing to respond to motions at the time of entry, and after years have passed following the expiration of the time for appeal. In addition to the timeframe noted above, the Court found significant that Don was pro se, “claim[ed] little knowledge of the legal system,” was “without the resources necessary to navigate the judicial system,” and was “the only defendant without the resources to retain counsel.” Opinion, ¶¶ 2,24, 21. Thus, pro se defendants who do not understand the legal system and have resources equal to or less than Don with which to hire counsel will most readily come within this ruling, which stands in clear contrast to our earlier rulings. As a recent example, in State v. Osborn, 2015 MT 48, 378 Mont. 244, 343 P.3d 1148, the Defendant challenged his sentence of commitment by way of a Rule 60(b) motion for relief from judgment instead of appealing to this Court, and missed the time for appealing. Osborn, ¶¶ 7, 15. The time for appealing expired on March 1,2014, and Osborn filed a notice of appeal on June 26,2014. Osborn, ¶ 15. We noted that, while “Osborn could have challenged the legality of his sentence through a direct appeal to this Court... . a defendant must file notice of appeal within 60 days after entry of judgment.” Osborn, ¶ 15. We noted that we can grant out-of-time appeals only in the infrequent harsh case and we did not grant Osborn an out-of-time appeal. Osborn, ¶ 15. Thus, Osborn lost his opportunity to challenge his sentence on appeal.
¶43 Setting aside default/default judgment. The Court first holds that the District Court erred by failing to consider “the reasonableness of [the] timing” of Don’s motion to set aside the judgment. Opinion, ¶ 18. The Court concludes that Don’s filing of the motion “one month after the conclusion of a pending appeal does not appear unreasonable” when it is considered that “[h]e appears not to have understood that entry of default effectively ended his role in the case.” Opinion, ¶ 19. To clarify, Don filed his motion to set aside in December 2010. This was two years and 10 months after the entry of default in February 2008, which was entered after Don failed to file an answer in response to the District Court’s order requiring him to do so, and then failed to respond to Gregory’s motion for entry of default. It was also eight months after entry of the “final” default judgment in April 2010, which was entered after Don failed to respond to Gregory’s motion for entry of the *241 judgment, and which proceeded from our dismissal of the first appeal for the specific purpose of including an assessment of damages against Don in a final judgment. Further, it was seven months after Gregory filed his second appeal in May 2010, during which time Don did not appeal from the entry of default judgment against him. Consequently, this ruling will provide helpful flexibility to pro se litigants with limited resources like Don’s to initiate challenges that are considered timely to defaults and default judgments long after they have been entered, even though the litigants have failed to avail themselves of the remedies of responding to motions for such relief, and of subsequent appeal, as long as the litigants did not understand their role in the case.
¶44 Turning to the merits of the motion, the Court grants relief from the judgment because it determines that the judgment is not equitable. Opinion, ¶ 24. The Court places heavy reliance on “the lack of any finding of liability against the remaining three defendants,” which it believes should also excuse any liability against Don. Opinion, ¶ 24. The Court believes that the District Court’s “determination that material defects were disclosed to Gregory undermined the factual basis of his claims against all defendants, including Donald.” Opinion, ¶ 5. However, as noted, the allegations against Don were that Gregory had contracted with Don to inspect the property and advise Gregory of any defects in the property. The other Defendants were dismissed because the District Court concluded that the sale documents, prepared by the real estate agents, had sufficiently provided “the means” for Gregory to learn the truth, that knowledge of the defects should be imputed to Gregory, and, therefore, the other Defendants had satisfied any duly to disclose the defects to Gregory. However, Gregory had hired Don to perform an independent inspection and advise him of any defects in the property. This was a separate relationship and a separate theory of liability under Restatement of Torts (Second) § 552, negligent misrepresentation, that was not absolved under the “imputation of knowledge” rationale applicable to the other Defendants. Rather, the tort is committed when:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Restatement (Second) of Torts § 552(1) (1965) (emphasis added).
*242 ¶45 The issue concerning Don is not, like the other Defendants, whether Gregory had imputed knowledge of the defects, but whether Don failed to exercise reasonable care in obtaining or communicating information about the defects to Gregory. Don was hired to be a safety net for Gregory, to provide another mechanism of discovering any defects in the property. There are certainly unresolved factual issues in this regard, such as whether Don had a pecuniary interest in the transaction, and whether his inspection report was accurate. However, those issues were never tested — and Gregory had no opportunity to prove them — because of Don’s default. Bottom line, the dismissal of the other Defendants did not resolve Gregory’s claim against Don, and the Court’s statements that “all theories of liability were affirmatively rejected by the court” and that the claim against Don was “meritless” are simply incorrect. Opinion, ¶¶ 22-21. A viable claim remained against Don, but it remained untested because of his own default.
¶46 The Court offers statements made by the other Defendants that objected to entry of judgment against Don as “the right thing to do.” Opinion, ¶¶ 8, 21. It should be borne in mind that all of these statements were made after these Defendants had prevailed on summary judgment. Prior to this success, the same Defendants, as quoted above, were seeking to shift their duty to disclose defects to Don, and were stipulating that Don was in default and that a trial should determine the damages for which he was liable. The thrust of their in-court statements following the entry of summary judgment was not that Don should be exonerated, but that the calculation of damages against him should be reasonable.
¶47 Nonetheless, the Court’s determination to set aside the default judgment shows the elastic nature of the application of equity and of its interpretation of “any other reason justifying relief” under Rule 60(b). Opinion, ¶ 24. This will provide a much expanded avenue for arguments from litigants who seek to attack judgments on equitable grounds, even years after the judgments were entered without response from the litigants.
¶48 Prejudice to represented parties. The Court cites Greenup v. Russell for the rule that self-represented litigants “should be granted some degree of latitude,” Opinion, ¶ 23, but does not mention that the “latitude cannot be so wide as to prejudice the other party.” 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. Unfortunately, the Court does not address whether setting aside the default judgment at this point will cause any prejudice to Gregory, probably an oversight. Considering that the judgment was obtained years ago by Gregory’s application to the court after Don had violated the court’s order to file an answer and *243 after Don had failed to respond to the application for the judgment, that Don failed to appeal the entry of judgment and the denial of his motion to set aside the judgment, that a writ of execution was issued and Gregory executed on Don’s property years ago, and that eight years have passed since Gregory filed his complaint, it may be arguable that Gregory has been prejudiced by the Court’s accommodations to Don. Regardless, this case will stand for the proposition that, whatever level of prejudice is necessary to limit a Court’s accommodation of a self-represented party, the bar is relatively high, something that counsel for former self-represented parties may want to note.
¶49 The final rule provided by the Court is simply a principle that advocates should always bear in mind. No matter how many years have passed, and no matter how many rules have been broken, if the Court’s sympathy for a party can be evoked, then the law will stand as no obstacle to relief.
¶50 1 dissent.

 In his 2/12/08 deposition, Don testified that he had operated as a building contractor for over 20 years, but that he had recently retired.

 The Court also quotes Don’s statement to Judge Prezeau that he had not been paid and had done the inspection “as a favor,” Opinion, ¶ 3. However, there is evidence that Gregory paid $200 for Don’s inspection of the property.

 The Complaint alleged that the defects included “leaks in the building, leaks in the plumbing, leaks in the waterline serving water to the Property, inoperability of heating systems, plugged plumbing and drains, [and] the presence of toxic mold.”

 The pre-trial order was revised by court order in January 2009, but none of the revisions affected Don’s position in the case.

 The same rule and citation as stated in the 2011 version remains in effect.